**UNITED STATES of America, Appellee,**

v.

**Jerome TREMONT, Defendant, Appellant.**

**No. 7555.**

United States Court of Appeals, First Circuit.

June 29, 1970.

Certiorari Denied Oct. 12, 1970.
See 91 S.Ct. 63.

---

See also, 1 Cir., 427 F.2d 1107.

- - - ◆ - - -

James D. St. Clair, Boston, Mass., with whom William E. Bailey and Hale & Dorr, Boston, Mass., were on brief, for appellant.

Joseph A. Lena, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., Boston, Mass., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant Tremont was convicted for violating 18 U.S.C. § 1010 by "making and causing to be made" a false statement in an FHA loan application. The single count of the indictment is reproduced in the margin.[1]

---

1. "The Grand Jury Charges:

"COUNT I

"On or about April 12, 1968, in Lynn, in the District of Massachusetts, JEROME TREMONT of Cambridge, in said District, for the purpose of causing a loan and advance of credit to be made by Lynn Safe Deposit and Trust Company, a corporation, to Gertrude A. Collins of Revere, in said District, with the intent that such loan and advance of credit would be offered to and accepted by the Department of Housing and Urban Development for insurance, and for the purpose of influencing action of such department, did wilfully and knowingly make, pass, utter and publish and cause to be made, passed, uttered and published to said Lynn Safe Deposit and Trust Company a certain false statement in a document executed by said Gertrude A. Collins entitled "Federal Housing Administration Credit Application for Property Improvement Loan," said JEROME TREMONT then knowing

It is undisputed that on April 15, 1968, Gertrude Collins,[2] in the presence of the defendant, signed an FHA application at the Lynn Safe Deposit and Trust Company. The application represented that the loan proceeds would be used to remodel the kitchen and bedroom of her house. Defendant's principal contention on appeal is that the government failed to sustain the burden of proving that a false statement was made, because when Miss Collins executed the application she fully intended to use the money for the designated purpose. Absent proof of this essential element, it is argued, the conviction cannot stand. Carvahlo v. United States, 113 U.S.App. D.C. 253, 307 F.2d 394 (1962). This theory overlooks critical facts brought out at trial.

On April 12, Tremont paid a visit to the bank and met with Kenneth Smith, the loan officer. At that time, according to Smith's testimony, Tremont filled out the FHA form, including the portion stating the purpose for which the loan was to be used. When Miss Collins went to the bank on April 15, all she did was sign her name to the completed form.[3]

 While very possibly Miss Collins did not read the paper she signed, in our opinion the jury could reasonably find that in point of fact she did not have the affirmative intention to use the proceeds of the loan for the purposes specified.[4] Although we do not reject this as a ground for our decision we rely principally on other grounds.

We find that the defendant's actions fit precisely within the words of the statute which applies to anyone who "for the purpose of influencing in any way the action of [the Department of Housing and Urban Development] makes * * * any statement knowing the same to be false, * * * " The fact that the defendant was not the borrower is of no consequence. Ross v. United States, 180 F.2d 160, 164 (6th Cir. 1950); Hartwell v. United States, 107 F.2d 359, 361 (5th Cir. 1939).

In Ross, the defendants worked a swindle by approaching homeowners and convincing them to allow siding to be placed on their homes as a model on the understanding that they would be paid commissions for every sale made to their neighbors due to their cooperation. Each family to whom the pitch was successfully made was sworn to secrecy, enabling the defendants to gull many people in the same community. The applicants were persuaded to sign blank FHA forms and promissory notes, which were later filled in with false information to make their financial situation appear more attractive. The notes were discounted by a credit corporation and insured by the FHA.

said statement to be false, in that said Gertrude A. Collins stated and certified therein that the proceeds of such loan would be used to improve the premises numbered 15 Tobin Avenue, Revere, in said District, whereas in truth and in fact, as said JEROME TREMONT then knew and intended, said proceeds were not to be used to improve said premises as aforesaid; in violation of Title 18 U.S.C. 1010."

2. Gertrude Collins was not named as a defendant, and no count for conspiracy was brought naming her as a co-conspirator.

3. Miss Collins testified at trial that at the time she arrived at the bank the form was not completely filled out. The government pointed out that she had testified before the grand jury that it had been completed prior to her arrival. Later, in her testimony, she made clear that the only thing she had trouble remembering was whether it was filled out before she came or while she was there, but left no doubt that the document was entirely filled in by Tremont.

4. The loan was made on April 15. The following August she sought an estimate for the first time. She sought another estimate in September or October. These were not to remodel the kitchen or bedroom and no work was done. In May 1969, after the FBI had begun an investigation, she obtained another estimate on work which related in part to the kitchen and bedroom. Eleven hundred dollars worth of work was finally done, but only about fifty dollars of that pertained to the kitchen. No work was done on the bedroom.

■ The court rejected the defense that the statute applies only to borrowers, on the ground that such a narrow construction would defeat the objectives of the Act. We see no material distinction between obtaining a signature through duplicity and then adding false information, as in *Ross,* and making a false statement prior to getting the signature, as was done here.[5]

■ Defendant argues that the statement contained in the loan application that the proceeds would be used to remodel the kitchen and bedroom could not be proved false merely because the money was used for other purposes as well. But there was ample evidence on which the jury could find that insofar as the defendant was concerned, the statement was indeed false.

Smith testified that the defendant told him he needed money to buy into a business. They had discussed the matter in the spring of 1968, but the bank could not help him because he lacked investment capital. Smith had the authority to approve FHA loans; and they discussed the possibility of the defendant's obtaining such loans. In April the defendant called Smith to tell him that he had someone he thought would qualify. That person turned out to be Miss Collins, and the loan was made on April 15. In exchange for his helpfulness, Smith testified there was a possibility that he would go to work for the defendant's new business.

As soon as the defendant and Miss Collins left the bank she endorsed the check over to the New Boston Realty Trust, of which the defendant was trustee. Prosecution witnesses traced disbursements from this account over a two week period, and testified to the various purposes, unrelated to home improvements, for which the money was spent.

The defendant contends that in due course work was subsequently done on Miss Collins' house. This was done so long after the event, and so much less than had been indicated, that the jury was clearly warranted in rejecting it as proof of the intent existing when the paper was signed. In light of this record, we deem the defendant's contention to be without merit.

■ Lastly, defendant argues that the failure of the court to give his requested instruction that § 1010 does not require a loan applicant to segregate the loan proceeds from his personal funds was prejudicial, when coupled with the evidence tracing the disposal of the loan proceeds for personal reasons. The court properly denied the instruction as irrelevant on the ground that the government had not suggested segregation of funds was necessary. Evidence pertaining to the actual use of the funds was

---

5. We note that the theory of the prosecution is that if Miss Collins is guilty of making a false statement, the defendant is too. As our opinion indicates, we think the conviction can be upheld on the strength of the defendant's actions alone. This turns on the fact that the defendant himself made the statements in the form. At no time has the defendant raised any question of variance between the indictment and proof. Nonetheless, we think it meet to consider the possibility of a variance. *See* United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

Allegations in the indictment must correspond to the proof so that the accused is sufficiently apprised of the charges to enable him to prepare his defense and protect him against double jeopardy. A variance to be fatal must "affect the substantial rights" of the accused. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). By this standard, the proof offered by the government did not expand the indictment. *See* note 1, *supra.* Cf. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Moreover, the defendant was advised by a bill of particulars that he "took part in furnishing the information appearing in the FHA loan application, including the statements concerning home improvements to be made with the loan proceeds." Furthermore, when Smith testified that the defendant had filled out the form, no objection was made. Thus even if there were a variance, we are convinced it was harmless error. 8 J. Moore, Federal Practice ¶7.05 [1] at 7–25 (2d ed. 1969).

admitted on the question of the defendant's intent, and the jury was so instructed. There was no error.

Affirmed.