UNITED STATES of America,
Plaintiff-Appellee,

v.

Leonard L. BURSTEN, Defendant-
Appellant (two cases).

Nos. 30224, 71–2139.

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1971.

Rehearing and Rehearing En Banc
Denied March 9, 1972.

Virgil M. Wheeler, Jr., New Orleans, La., Jesse G. Silverman, Jr., New York City, Andrew C. Hall, Hugh W. Gibert, Atlanta, Ga., David W. Walters, Miami, Fla., Sehrt, Boyle, Wheeler & Butler, New Orleans, La., and Roberts & Holland, New York City, for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Atty., Joseph M. Howard, Acting Atty., John M. Brant, Atty. Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and PHILLIPS * and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

The direct appeal from appellant Bursten's conviction for violation of 26 U.S.C. § 7201 is the subject of appeal No. 30224. Appeal No. 71–2139 is an appeal from the denial of appellant's mo-

tion for a new trial. These appeals have been consolidated at the request of the parties.

The conviction at issue followed this court's reversal of appellant's prior conviction on the same indictment. Since the underlying facts adduced in both trials are the same, we need only briefly state the facts relevant to this appeal, and we refer the reader for a fuller exposition of the underlying facts to this court's prior opinion in Bursten v. United States, 395 F.2d 976 (5th Cir., 1969).

The focus of our attention is a 1957 tax return filed by Bursten in 1960. Appellant's entries on that return indicated that no tax liability had accrued for the taxable year 1957, nevertheless on the line reserved for entry of tax due the Government, appellant entered the phrase: "Please compute and bill if owed." After an extensive audit of this return, the Government disallowed certain claimed capital losses, and in 1965 obtained the subject indictment.[1]

As noted, this appeal is from appellant's second trial on the indictment. This time the trial was unmarred by the procedural infirmities which had marked his first trip to the bar as a criminal defendant.[2] He here, however, asserts five grounds for reversal: (1) that the Government's failure to prove that appellant's tax return contained the language attributed to it by the grand jury precludes his conviction; (2) that the prosecutor's argument was so improper as to require reversal; (3) that appellant was entitled to have the jury instructed that

---

* Of the Tenth Circuit, sitting by designation.

1. "That on or about the 9th day of May, 1960, in the Southern District of Florida, the defendant,

 LEONARD L. BURSTEN

 late of Miami Beach, Florida did wilfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 1957, by filing and causing to be filed with the District Director of Internal Revenue for the Internal Revenue District of Jacksonville, at Jacksonville, Florida, a false and fraudulent income

 tax return wherein he stated that he did not have any taxable income for said calendar year and that no tax was due and owing, whereas, as he then and there well knew, his taxable income for the said calendar year was the sum of $152,767.14, upon which said taxable income he owed to the United States of America an income tax of $93,093.40; in violation of Title 26, United States Code, Section 7201."

 A second count was dismissed prior to trial.

2. Bursten has been an attorney and served for a time as an Assistant United States Attorney in Wisconsin.

it draw no inference from the defense resting without adducing evidence, and that it not infer that a lawyer defendant has any greater knowledge of the tax laws than any other citizen; (4) that the Government's evidence was adduced in violation of the parol evidence rule; and (5) that the prosecutor's argument about Bursten's criminal intent was in contradiction to the evidence. In No. 71–2139 appellant asserts that the trial court erred in denying his motion for a new trial based on newly discovered evidence. After review, we have determined that Bursten's conviction must be affirmed. Our following discussion is limited to those arguments advanced of plausible merit.

## I.

▉ Appellant's first point of appeal was stated to be "[w]hether the conviction was precluded by the Government's failure to prove that Appellant stated in his 1957 Income Tax Return that 'no tax was due and owing.'" This issue raises the problems of a variance between an indictment which a grand jury has returned and proof adduced at trial. Here, the grand jury's indictment alleged that Bursten had stated on his 1957 tax return that no tax was due and owing. At trial, however, the evidence adduced irrefutably demonstrated that the subject return did not use the quoted language. Instead, on the line reserved on Form 1040 for computation of tax liability, it showed that appellant had entered the language: "Please compute and bill if owed." Bursten here asserts that this difference between allegation and evidence was an "effective" amendment of a grand jury indictment and requires reversal.[3]

The cases considering this problem have drawn a distinction between the "effective" amendment of the grand jury indictment which requires reversal,[4] and less material variances which do not destroy a defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury, and thus, such a lesser variance may be harmless.[5]

The distinction has been articulated by the District of Columbia Circuit in *Gaither, supra,* where the court stated:

"The courts have recognized two kinds of erroneous departure from the original indictment of a grand jury, each with its own standards governing prejudice. An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

"An amendment is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny. A variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against reprosecution." 413 F.2d 1071–1072.

The distinction has also been considered to turn on the question of whether the defendant was tried for some crime other than that upon which the grand jury

3. An "effective" amendment of an indictment is said to occur when the allegations of the indictment and the proof adduced at trial are materially different. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

4. Stirone v. United States, *supra;* United States v. Fischetti and Gillette, 450 F.2d 34 (5th Cir., 1971); United States v. Beard, 436 F.2d 1084 (5th Cir., 1971);

Gaither v. United States, 134 U.S.App. D.C. 154, 413 F.2d 1061 (1969).

5. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Nunnally v. United States, 291 F.2d 205 (5th Cir., 1961); United States v. Tremont, 429 F.2d 1166 (1st Cir., 1970), cert. den., 400 U.S. 831, 91 S.Ct. 63, 27 L.Ed.2d 63 (1970).

had indicted. In United States v. Beard, 436 F.2d 1084 (5th Cir., 1971), the issue was raised and the court there stated that an infirmity arose, and we quote:

"The only case ever presented by the prosecution to the Grand Jury necessarily was on the theory that the actions of the appellant constituted a violation of Title 18, U.S.C., Section 13, by reason of violation of the Texas embezzlement statute, Section 1534 of the Texas Penal Code. The appellant was tried and convicted for violating a wholly different statutory provision. Title 18, U.S.C., Section 661. Permission was not asked of or given by the trial judge for formal amendment of the indictment, but nevertheless the indictment was in effect amended by the government's change in position during the course of the trial when the fatal defects in the proof came to light, and the court refused to grant the motion to dismiss the indictment."

Bursten's case differs. This case is distinguished from *Beard* in that it is not a case of a grand jury indicting for an offense under one section of the United States Code and the prosecution proving guilt of a second and different offense. Appellant here was charged with a violation of 26 U.S.C. § 7201. Considering the nature of appellant's tax return, a sufficient allegation of an offense under this section was made whether the grand jury alleged taxpayer's statements to be as they are on his return or as alleged in the indictment. Nor does Janko v. United States, 281 F.2d 156 (8th Cir., 1960), reversed on other grounds, 366 U. S. 716, 81 S.Ct. 1662, 6 L.Ed.2d 846, require a contrary result. Further, we note that regardless of the language on line 12 of Bursten's return, the 1957 return was on its face a "loss" return and showed no taxable income had accrued.

Since there is no assertion, nor, as this is the second trial on the indictment, could there be, that appellant had no notice of the charge against him or of the kind of evidence to be introduced, we conclude that in the absence of a showing of prejudice to appellant the variance

at issue was not material and was harmless. Berger v. United States *supra*; United States v. Tremont, *supra*; compare United States v. Birrell, 447 F.2d 1168 (2nd Cir., 1971).

## II.

Appellant's second theory for reversal involves the scope of permissible prosecutorial argument. Bursten contends that the prosecutor's rebuttal argument was prejudicial and impermissible in that its reference to defense's opening statements and its charge of "panic" and "inability to put on a defense" amounted to a commentary on defendant's refusal to testify or conduct a defense. What is precisely at issue are the following statements:

"You heard defense counsel get up here. I want you to remember what he told you in his opening statement. I am not going to go through it. Remember what he told you, and remember, please, that I told you that this is what we expected to prove, what he hoped to prove.

\* \* \* \* \* \*

"I say to you and I ask you to remember that the Government told you to look at the evidence in the case, see if the Government did what it told you that it hoped to prove, what it expected to prove, and thing [sic] about what the defense told you—

\* \* \* \* \* \*

"I submit to you that the defense panicked in this case. I submit to you they didn't think the Government could do it. It did go back some years. Kadison showed up. Sawyer showed up. Burris showed up. Adcock showed up. They panicked. They couldn't put on a defense, I submit to you. That's what happened." [See 395 F.2d 976 for background.]

Fairness, in considering the propriety of prosecutorial comments, requires that the context and circumstances of the statements be considered.

Appellant's defense as indicated by his attorney's closing remarks was based upon the belief that the prosecution had failed to prove its case beyond a reason-

able doubt. Consequently, Bursten rested at the close of the Government's case without calling any witnesses. In summation to the jury defense attorneys argued:

"Going now to the question that I hope to present to you, ladies and gentlemen, is a fact that I say in this case, I submit, that the evidence clearly demonstrates that the Government has failed miserably, patently in discharging the burden, its burden in the case, to prove beyond a reasonable doubt that all of the evidence involved in the offense existed.

"We say they didn't prove these elements and we rested. We rely on the fact that if the Government has not made up its case, that we don't have to go forward. That's how strongly we felt about it.

\* \* \* \* \* \*

"Now, let's go to the $140,000 question. What evidence is there—what did the Government present—and they have the burden here, and Mr. Alexander recognized it, and he is sweet, a very fine chap, and I lik (sic) him very much. He is sincere.

"He tells you, and I agree with him, that the Government has the burden, and this is a heavy burden, members of the jury. It must be a heavy burden. We are dealing with a fellow here, one for which you can be committed if found guilty. (sic)

"Now, they have a serious burden. It was the lack of their proving and satisfying that burden that we didn't go forward. We were convinced that they failed.

"Now, what did they come into Court and tell you about this $140,000 loss in the year 1957? What evidence did they bring to you to determine whether it, in fact, did or did not exist?

"The simple answer, again, can't be denied—it is none—they didn't come in and tell you or produce a witness to tell you that.

"They produced tons and tons of documents, and they produced witnesses, none of whom really bore into this case to a real serious extent, and some of whom were, of course, important to get the story from or the facts before you.

"However, where is the agent, the special agent or revenue agent who examined and investigated the 1957 return?

"They bring in the agent for the 1952, 1953, 1954 examination. They bring in Elledge, the chief of the Appellate Division then, but no one, not one agent, ladies and gentlemen, who investigated the 1957 return that we stand here to defend.

"Now, isn't it their obligation? It is their obligation to do so. Why didn't they bring that agent in here? Why didn't they bring the agent in here?

"Would it have been that that agent would have told you that there was a transaction that occurred in 1957, that there were discussions had with Mr. Bursten concerning that transaction?

\* \* \* \* \* \*

"Now, then, ladies and gentlemen, it would have been very simple for them to have done this, to help prosecute this case and it would have made me go forward if they would have put that one agent on the stand to examine the books and records of Mr. Bursten and had him tell you that 'I examined those records. I examined his affairs,' and they do that. They can't tell you otherwise.

"Nowhere in my examination and in my investigation did I find any justification for this loss—that's all they had to tell you. That's all they had to tell me, and had they done that, I would have gone forward, but the burden is theirs, not mine. It is not our obligation, and this is important, so serious, so very serious.

"It is not our burden. It is their burden. They failed. They 'missed the boat'—if they had a case, and, no, they don't have a case, but in my opinion I think the evidence shows that.

"Now, could it have been that that witness, that agent, who was their agent, would have testified that that dispute existed? He didn't appear. They didn't even bring that agent to you. Why?

What are they concealing? Are they going to try to convict the man and fail to produce all of the parties, the witnesses that they have, so that we can examine them—the Government, ladies and gentlemen, has not even denied with a witness that there was no 1957 transaction."

 The prosecution's remarks, when viewed in proper perspective, are in the nature of a rebuttal to these arguments. The serious issue raised by the prosecution's arguments is whether they constituted an impermissible comment on the appellant's exercise of his privilege to refrain from testifying and putting on a defense. Commentary on a defendant's exercise of his Fifth Amendment privilege or on his refusal to take the witness stand is constitutionally impermissible. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Commentary on the defense strategy of putting the Government to its proof may, however, be proper so long as it does not amount to a veiled invitation to the jury to consider the defendant's refusal to testify. Knowles v. United States, 224 F.2d 168 (10th Cir., 1955); United States v. Johnson, 337 F.2d 180 (4th Cir., 1964) affirmed, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1965); Doty v. United States, 416 F.2d 887 (10th Cir., 1968). Not every characterization of the

evidence or of the defendant's case made in the course of advocacy is to be taken as a comment on the defendant's refusal to testify. Cf. Holden v. United States, 393 F.2d 276 (1st Cir., 1968), but see United States v. Broadhead, 413 F.2d 1351 (7th Cir., 1969). Here the prosecution's request that the jury recall the opening statements and compare them with their recollection of the case was not a direct comment on appellant's refusal to testify, nor when taken in context does it naturally lead to such an inference. In view of the district court's cautionary instructions these comments did not constitute error.

This court, however, is unable to affirmatively state that the prosecutor's comments of "panic" and "inability to present a defense" which conceivably asks the jury to conclude that appellant had panicked because he had no case, and had no case because he was guilty, were properly within the realm of a fair response to defense argument.[6]

 A United States Attorney is in a special position of trust and confidence with a jury. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Hall v. United States, 419 F.2d 582 (5th Cir., 1969). As an advocate he is permitted to make a fair response to defense arguments. The doctrine does not, however, give him what the First Circuit has described as "a hunting license exempt from ethical constraints on

---

6. The modern doctrine of fair response seems to have arisen from Judge Learned Hand's observations in United States v. Feinberg, 140 F.2d 592 (2nd Cir., 1944). Judge Hand there stated:

"The next complaint is that in his closing address the prosecutor commented upon the fact that none of the accused took the stand. At first blush this appears as a grave error, but on closer examination it turns out to have been quite justified. The record does not contain the closing address of the accused's counsel and we have it only from the version given by the judge, which was that counsel had said that the jury had heard all the testimony 'and the defendants, if they took the stand, could not add anything to that';

and that 'they had been interrogated thoroughly.' 'I know all the testimony. There would not be anything that they could add to what had been testified to.' *In so assuring the jury, the counsel invited their consideration of what the accused would have said on the stand, and surely he surrendered any privilege they had not to testify. He could not in justice ask that the prosecutor must accept his version unchallenged."* (Emphasis added.)
See United States v. Broadhead, 413 F.2d 1351 (7th Cir., 1969); Babb v. United States, 351 F.2d 863 (8th Cir., 1965); Isaacs v. United States, 301 F.2d 706 (8th Cir., 1962); Annot. 50 A.L.R.2d 766 and later case service, collecting cases.

advocacy." Patriarca v. United States, 402 F.2d 314 (1st Cir., 1961). He is at liberty to strike hard blows, but not foul ones. Berger v. United States, *supra.* The comments at issue are, if within the balance of a permissible fair reply, at the very margin of that doctrine. We need not, however, determine whether the comments fall on one side of the line or the other, nor need we determine where that line is to be drawn, for if erroneous the comments were nonetheless harmless. Under F.R.Crim.P. 52(a) [7] and Chapman v. California, *supra,* prosecutorial comment such as that at issue may be harmless error and corrected by instruction. United States v. Toler, 440 F.2d 1242 (5th Cir., 1971); United States v. Smith, 436 F.2d 787 (5th Cir., 1971); United States v. Reid, 410 F.2d 1223 (7th Cir., 1969); United States v. Broadhead, *supra.* The case at bar is such a case. The district judge permitted the challenged argument as a fair response to defense arguments, but his instructions, both before argument and before the jury retired for its deliberations, stressed that the closing arguments were not evidence and that the jury should base its verdict solely on legally competent evidence. We have no indication that the jury failed to follow that instruction. We hold that, in light of the context of these arguments and of the district court's instructions, the comments did not constitute prejudicial error and are harmless beyond a reasonable doubt. Chapman v. California, *supra.* See Cameron and Osborn, When Harmless Error Isn't Harmless, 1971, Law & Soc.Order 23.

As another verse to appellant's refrain of impermissible prosecutorial argument, Bursten argues that the prosecutor committed plain error when he asked the jury to ascribe to appellant elements of intent which he knew were plainly and completely untrue and unsupported by the record. This point has been augmented by the record submitted in No. 71–2139. The substance of the objection goes to the following comments:

"Let me show you something why I said his return is interesting. This return is filed on May 9 of 1960, and it's a 1957 return. It was due in April of 1958, but it wasn't filed until May of 1960.

"Just hold that in your minds for a moment and let me show you one other thing, if I may, on Exhibit 6.

"That return was signed on November 10 of '59, six months before the defendant got up courage to file it. He couldn't give up that money. He wasn't about to pay the Government any taxes, but it wasn't an easy decision.

"This is no negligence here. This was thought out and this was something about screwing your courage up —shall I file it, will they catch me, will they overlook it?

"I think he went through that for a couple of weeks and had the courage to sign it, but not enough courage to file.

"He stewed for a few weeks and then something happened. He worried some more. What is he going to do with that return?

"He didn't file it until after six months. He signed it, kept it around for six months. The promoter in him, he couldn't give it up, he just couldn't pay the Government a hundred thousand dollars and he couldn't pay the Government $32,000, so what did this man do that has the kind of mind that can develop another Miami Beach or think in those terms? He filed a return with that explanation and on the front of it he shows a loss, $14,000, against that $8,000 of other income. That leaves a loss, no tax due.

"What is the defendant doing?

"He is, I suggest, the type of person who always wants an insurance policy,

---

7. F.R.Crim.P. 52(a) provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

something he can fuss about—if he gets caught, if the ball bounces the wrong way, and he put right on the return, "Please compute and bill if owed."

"Please compute and bill what? What? What are we going to compute, if I may ask? There wasn't anything to bill and compute."

Bursten contends that this argument was outrageous, first because he asserts that the record established that the Government knew Bursten submitted his return directly to an Internal Revenue Agent for immediate audit. He asserts that even with this knowledge the Government argued to the jury that Bursten did not. Moreover, the prosecutor argued, according to Bursten's version, that he had filed his return with the hope and expectation of avoiding audit, thus accomplishing his scheme of evading taxes. Bursten asserts that this is the equivalent of the knowing use of perjured testimony and requires reversal. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed. 2d 690 (1967); Jackson v. Wainwright, 390 F.2d 288 (5th Cir., 1968).

The issue is whether the prosecutor's argument was consistent with the evidence and, even if inconsistent, was it an intentional misstatement. We do not reach the question of intentional misstatements because in our view the comment was consistent with all the evidence before the jury and consistent with the reports of the Internal Revenue Service Agent who conducted the inquiry into the 1957 tax return.

The testimony of Agent Jaffe and of his reports was the subject of No. 71–2139. Jaffe's report, which was not introduced into evidence in No. 30224 but was introduced on the motion for new trial, clearly documents that Jaffe had contacted Bursten in December of 1959, or in early January of 1960. The objected to argument, of course, occurred in No. 30224, at which time the Jaffe report was not in evidence. The best evidence, however, the 1957 tax return, was in evidence and supported the inferences which the prosecutor asked the jury to draw.

In connection with appellant's assertion of the impropriety of argument, we note that appellant's counsel in his closing following the prosecutor's remarks previously quoted stated:

"In 1958 our return, as approximately pointed out by our eminent colleague, Mr. Alexander, was not filed until May of 1960. Whether it was filed late or not is not an issue in this case, but it is most significant to me, to you, ladies and gentlemen, I suggest. We know and the Government acknowledges, as they must, that the return was filed after these discussions had with Internal Revenue Service representatives."

We, therefore, find no merit in appellant's assertion in No. 71–2139 that the Government had violated its duties under the Jencks Act, 18 U.S.C.A. § 3500, or under the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The assertion falls of its own weight and merits no further discussion.

The judgment of conviction under appeal in No. 30224 is affirmed. The appeal from the motion for new trial in No. 71–2139 is likewise affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.