**358**

**UNITED STATES of America**
**v.**
**Jerry LUCIANETTI and Edward Casper.**
**Crim. No. 72–80.**

United States District Court,
E. D. Pennsylvania.

Dec. 29, 1972.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

A. Charles Peruto, Lorch, Ryan, Peruto, Vitullo & Tinari, James M. Moran, Black & Moran, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

These defendants, Lucianetti and Casper, bring individual post-trial motions for judgments of acquittal and for new trials. Defendant Lucianetti was found guilty, by a jury, of violating 18 U.S.C. § 659 (theft from foreign shipment) and defendant Casper was found guilty, by the same jury, of violating 18 U.S.C. § 2 (aiding and abetting).

The criminal transaction in question involved the theft of 165 cartons of frozen beef from the stream of foreign commerce. Defendant Casper was the "checker" responsible for seeing that only the proper amount of merchandise was loaded on defendant Lucianetti's truck at Pier 78 in the City of Philadelphia. Lucianetti was "pulled over" by private detectives while still in the pier area and before signing for his load, and an overage of 165 cartons was discovered on his truck. In their respective motions for judgment of acquittal under Fed.R.Crim.P. 29(c), the defendants allege that the evidence was insufficient to sustain the jury's verdict. In their motions for new trial the defendants charge that fatal error was committed when the Assistant United States Attorney made a number of "impermissible" comments during the course of the case. Defendant Casper argues additionally that he was improperly questioned about a purported prior felony conviction. These points will be treated separately.

1. *Defendant Lucianetti's Motion for Judgment of Acquittal.*

We must start from the premise that when a jury has returned a guilty verdict "the prosecution is entitled to the benefit of all reasonable inferences from the evidence and that any conflicts in the evidence are to be resolved in favor of the jury verdict." United States v. May, 419 F.2d 553, 555 (8th Cir. 1969).

■ An examination of the evidence presented to the jury in this case indicates that reasonable men could have reached a verdict of guilty. The evidence was not overwhelming nor was it uncontradicted, but under all the circumstances, it was sufficient to support the verdict.

■ Defendant Lucianetti also alleges that he could not have committed an offense under § 659 since he was stopped by the detectives while still in the pier area. A similar contention was raised in Sterling v. United States, 333 F.2d 443, 446 (9th Cir.), cert. denied, 379 U.S. 933, 85 S.Ct. 333, 13 L.Ed.2d 344 (1964):

> Appellants contend that the evidence does not show a "taking" or a "carrying away" of the whisky because when the truck was stopped at the gate it was still in Pier 20. There is no merit to this contention.

In *Sterling* the truck had moved one-third of a mile from the platform to the gate. There is no reasonable basis upon which to distinguish the movement in the present case.

The motion for acquittal is denied.

2. *Defendant Casper's Motion for Judgment of Acquittal.*

Defendant Casper was found guilty of violating 18 U.S.C. § 2 by aiding and abetting Lucianetti in the theft of the meat. He argues that the government merely showed he may have been at the scene of the crime at the time and that he may have had an opportunity to become an aider and abettor, but that the proof was insufficient to establish that he actually became one.

The Third Circuit has clearly and concisely set forth the factors which must be considered when dealing with a charge of aiding and abetting. In United States v. Barber, 429 F.2d 1394, 1397 (3rd Cir. 1970), the court said:

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort [sic] associate himself with the venture, [i. e., the criminal enterprise] that he participate in it as in something that he wishes to bring about, that he seek

by his action to make it succeed." United States v. Peoni, 2d Cir. 1938, 100 F.2d 401, 402, quoted with approval in Nye & Nissen v. United States, 1949, 336 U.S. 613, 619, 69 S. Ct. 766, 93 L.Ed. 919. Therefore, mere presence at the scene of a crime, even in the company of one or more principal wrongdoers, does not alone make one an aider or abetter. (citations omitted).

In addition, the conduct of the individual charged *or other special circumstances* attending his presence must be such as to show that he has associated himself with and participated in the criminal undertaking . . . .. The courts have the responsibility to make sure that mere speculation is not permitted to substitute for proof in such cases. (Emphasis added).

The court gave several examples of significant factors beyond mere presence —serving as a lookout, verbal encouragement of an assault, intimidating and blocking the escape of a victim assaulted by a third party, flight from the scene of the crime with the perpetrator. (*Id.* at n. 4).

*Barber* has been cited with approval by other circuits. *See* United States v. Kelton, 446 F.2d 669, 671 (8th Cir. 1971); United States v. Barfield, 447 F.2d 85, 88 (5th Cir. 1971).

█ The "other special circumstances" present here which could be a reasonable basis for a jury verdict of guilty were that defendant Casper was in charge of, and had the responsibility for, the loading of defendant Lucianetti's truck (although the actual physical loading of the cartons was done by defendant Lucianetti and his helper. The cartons were brought to the truck by the "chisel driver", Slick Mason, under Casper's direction). In addition, after the loading was completed, Casper turned in his tally sheet showing that the total load did not exceed the amount to which Lucianetti was entitled. These facts, coupled with the inference which the jury could draw from the evidence indicating that all of the purloined beef was in the front of the truck (and thereby concealed from view), provide a reasonable set of "special circumstances" for the verdict. In addition, there was testimony from one of the government witnesses that he had Lucianetti's truck under almost constant surveillance and that it was empty when it pulled into the dock. The jury could reasonably conclude that this was substantially correct even though a second government witness testified that there was a box of bacon in the truck when it was off-loaded the following day. All this evidence, albeit circumstantial, was sufficient for the jury to determine that Casper was more akin to a "lookout" than an "innocent bystander."

The motion for acquittal is denied.

3. *Defendant Lucianetti's Motion for New Trial.*

Defendant raises three points in his motion for new trial: one, that the Assistant United States Attorney in his summation to the jury made the impermissible comment, "You know, we don't arrest and indict everybody"; two, that the Assistant United States Attorney in his summation referred to the defendant as "a liar" and three, that the Assistant United States Attorney made impermissible comment on the failure of the defendant to call a key witness.

The first statement is found at N.T. 5–103. It is clear from the context that this remark was directed against defendant Casper, not against Lucianetti, but if it was prejudicial to the former the harm to the latter would be equally obvious.

Defense counsel, however, made no objection to this statement and it went unchallenged. Reliance is now placed on Hall v. United States, 419 F.2d 582 (5th Cir. 1969), in which appellant's conviction was reversed on the basis of several comments made to the jurors by the Assistant United States Attorney. One of the statements which the court found to be objectionable was the remark, "we

try to prosecute only the guilty." The statement involved in this motion arguably speaks to the same point by negative implication even though it is not as directly damaging on its face.

The Fifth Circuit has expressed its views on this subject quite clearly:

> A United States Attorney is in a special position of trust and confidence with a jury. [citations omitted]. As an advocate he is permitted to make a fair response to defense arguments. The doctrine does not, however, give him what the First Circuit has described as "a hunting license exempt from ethical constraints on advocacy." [citation omitted]. He is at liberty to strike hard blows, but not foul ones [citation omitted].

United States v. Bursten, 453 F.2d 605, 610–611 (5th Cir. 1971).

*Bursten* went on to say that prosecution comment "such as that at issue may be harmless error and corrected by instruction." *Id.* at 611. This approach finds support in United States v. Grooms, 454 F.2d 1308, 1311–1313 (7th Cir. 1972) and United States v. D'Antonio, 362 F.2d 151, 155 (7th Cir.), cert. denied, 385 U.S. 900, 87 S.Ct. 204, 17 L.Ed.2d 131 (1966).

In United States v. Haley, 452 F.2d 398, 404 (8th Cir. 1971), cert. denied, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972), the court faced an analogous, but more clearly harmful, situation:

> During the closing argument the prosecuting attorney urged: "The law is made by Senators and Congressmen of this country and we're charging him because he's guilty of those three offenses." The trial court overruled the defendant's motion for mistrial and then cautioned the jury, "You are admonished to disregard that statement that has been referred to by counsel." We cannot assess the prosecutor's remarks, particularly in view of the court's admonition, as having any influence on the verdict. [citations omitted]. Assuming error, on the overall record presented here the remark was harmless. [citations omitted].

*See* United States v. Smith, 441 F.2d 539 (9th Cir. 1971).

The Third Circuit has endorsed the curative instruction approach as well. *See* United States v. American Radiator & Standard Sanitary Corporation, 433 F.2d 174, 191 (3rd Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 928, 28 L.Ed.2d 231 (1971).

█ In the present case, counsel made no objection to the prosecutor's remark during the summation and raises it now for the first time. I believe that any possible prejudice which may have been placed in the minds of the jurors was more than adequately dispelled by the charge.[1]

Therefore, I find that any harm caused by this remark was harmless error and did not deprive the defendant Lucianetti of a fair trial.

Defendant Lucianetti also raises the prosecution's characterization of the defendant, *i. e.,* "a liar", as further grounds for a new trial. The challenged language is as follows:

> I say to you, and I never like to say this, and every once in a while inevitably it is part of the job, there is no use quailing at it, every once in a while you have to in frank terms say somebody is a liar here.
>
> Clearly somebody is a liar. I don't like to get into that but somebody is a liar. (N.T. 5–87).

It is argued that this is an obvious reference to the defendant. The alleged "obviousness" of the reference is not so clear to the court, but I will treat it as such for purposes of this motion.

---

1. Specifically, the presumption of innocence was strongly stressed (N.T. 5–171f.) and the function and proper role of the indictment was explained (N.T. 5–174). In addition a general "disclaimer" of the probative value of closing arguments was expressed (N.T. 5–169).

Over many years, a great variety of "colorful", and sometimes vicious, remarks have been made by federal prosecutors with reference to numerous defendants. In United States v. Wolfson, 322 F.Supp. 798 (D.Del.1971), affirmed 454 F.2d 60 (3rd Cir.), cert. denied, 406 U.S. 924, 92 S.Ct. 1792, 32 L.Ed.2d 124 (1972), defendants moved for judgment of acquittal or a new trial. In the prosecution's closing, there were references to the defendants as "crooks", "viruses" or "germs". The court went to great length to set forth a compendium of remarks raised as error in this and other circuits (322 F.Supp. at 825, 826). With these instances as background, the court answered the allegations of error in the motion then before it:

> Examining the record in the present case, this Court does not find that the brief references made to the defendants as "crooks," "viruses," or "germs," were sufficiently prejudicial under the prevailing judicial standards to require the convictions to be set aside on this ground . . ..
> The Court remembers the summation, the manner and tone in which it was given and clearly recalls that the objectionable references were casually and quickly made and were an insignificant part of the government's argument.

*Id.* at 827–828.[2]

The Third Circuit has indicated that in order to rise to the level of reversible error, the objectionable remark must be "part of a persistent and calculated attack on the character of the defendants" and not merely a "single passing observation in a dignified, earnest summation." United States v. Barbone, 283 F.2d 628, 632 (3rd Cir. 1960), appeal dismissed per stipulation, 365 U.S. 805, 81 S.Ct. 686, 5 L.Ed.2d 688 (1961).

Other courts have found that characterization of the defendant as a "liar", United States v. Hoffman, 415 F.2d 14, 21 (7th Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969), or a "prevaricator" United States v. Dews, 135 U.S.App.D.C. 185, 417 F.2d 753, 755 (1969), have not been so prejudicial, in the entire context of the case, as to require reversal.

█ I recall the summation of the prosecutor in this case and while he made this unfortunate remark, it was stated without rancor or crass indifference to the rights of the defendant. The failure of counsel to object during the summation or even at the close supports this interpretation.

This contention of the defendant must, therefore, be rejected.

Finally, defendant Lucianetti argues that the prosecutor made improper reference to the failure of the defendant to call a "key" witness.

The remarks objected to can best be classified as a retaliatory response by the prosecutor to certain statements, and inferences taken, made by defendant's counsel in his closing argument.[3] The

---

2. The Court went on to note that "[f]or the Court to have ordered the comments stricken *sua sponte* would have called more attention to them and placed more emphasis on them than they were given at the trial. It is obvious from the transcript that there was no conscious, deliberate attempt on the part of the prosecution to malign the defendants' character, that the remarks were not so patently offensive as to prejudice the jury, and that the comments were only an incidental part of the closing argument and do not rise to the level of prejudicial error." *Id.*

3. Mr. Peruto stated in his closing:

> My God, can you conceive of the mountains of boxes of meat on that pier that day?

The thing that is amazing is that they don't have 60 percent mistakes. That is what is amazing.

> Now he [the prosecutor] says I don't know whether Mr. Mason has anything to do with it or not. Why? Why, when the witness took the stand and he asked: Who was the chisel driver, and he says Mr. Mason: Do you mean Slick Mason? What was that for? Isn't it to give you the idea that this guy is a sharpster, he is a little slick?

> Well, if it is impossible to be a mistake with the way they check on things then Slicky boy has got to be in on it.

> And why ain't he here? At least why didn't somebody say: Yo, Slick, what happened there, kid?

response made to those remarks by the prosecutor was made without objection from the defense counsel and the prejudicial nature, if any, is raised now for the first time.

■■ I believe that it is abundantly clear from the record that the prosecutor's statement can only be regarded as a fair response to the suggestion planted by defense counsel in the minds of the jurors that the government was hiding something. In effect, the prosecutor merely stated that he had no obligation to put Mason on the stand, and if the defense wanted him, they could have called him. There was nothing prejudicial about this, especially in light of the instruction to the jury regarding the presumption of innocence and the absolute right of the defendant to offer no testimony or evidence whatsoever. (N. T. 5–171–173). See United States v. Schartner, 426 F.2d 470, 477 (3rd Cir. 1970). This contention is therefore rejected.[4]

The motion of defendant Lucianetti for new trial is denied.

### 4. *Defendant Casper's Motion for New Trial.*

Defendant Casper alleges that he should be granted a new trial for two reasons. First, that the court committed error when it permitted the United States Attorney to ask defendant Casper, over objection, if in fact he had been convicted of a felony. Second, that certain remarks made by the prosecutor in his closing address were improper

and prejudicial. I shall deal with the "improper remarks" first.

■ There are twelve remarks called into question. The first, "So Casper is very very wrong. He is really wrong. Now is he wrong or is he more than wrong?"; and the second, "Is he a crook? Well, he is a crook. And I will tell you why he is a crook," are logically and practically one and will be treated as such. Despite counsel's defensible suggestion that this may have been a reference to Casper's alleged prior "felony" conviction, I think it is clear from the context that it was made with reference to the offense then being tried. Such a characterization of the defendant is not only unfortunate and uncalled for, but in some circumstances may be of such magnitude as to require reversal of the conviction. *Schartner, supra,* at 478. Here, however, we are faced with a characterization based on the prosecutor's view of the evidence and not merely on his own belief as to the defendant's guilt, which would be impermissible and inexcusable. The prosecutor based this conclusion on inferences which he asked the jury to draw from the testimony (N.T. 5–95); this case is, therefore, closer to United States v. Meisch, 370 F.2d 768, 773 (3rd Cir. 1966).

■ The third remark, "He [Casper] commits his crime by doing nothing when he is supposed to do something," is challenged as a misstatement of the law which might have led the jury to conclude that defendant Casper

---

Well, I got mistake.
O.K., Slick, you go ahead home, you made a mistake, forget it, don't even show up at court, Slick. But, boy, we got those two guys, we got them, Slick.
How could Slick not be a defendant if this is not a mistake? I don't know.
(N.T. 5–140, 141).

4. Defendant also suggests [brief at 12–14] an additional point concerning the missing witness, Slick Mason. Defendant alleges that certain comments made by the prosecutor in his summation with reference to Mason did "advise the jury that somehow the

prosecutor had other evidence, not put into the record of the case which would clear Mason, the only other fellow who would have been a criminally involved defendant in the case." The remarks in question do not suggest that other evidence available to the prosecutor and not presented at trial was being alluded to. Rather the remarks seem to be simply an attempt by the prosecutor to refute the idea which he seemed to feel was planted in the minds of the jurors by the defense attorney. That is, that Slick Mason was the real culprit in this case. This contention is, therefore, without merit.

could be convicted of this crime by doing nothing, as opposed to actually committing some illegal act as an aider and abettor. This interpretation however wrenches the remark out of context. The "doing nothing" refers to the prosecution's position that Casper was under an obligation to assure that the proper total went onto the truck and that it was his failure to stop the overage, *i. e.*, "doing nothing" to stop it, which was the element in his action essential for the commission of this crime. Any misapprehension placed in the minds of the jurors was clearly corrected by the instructions on the essential elements of aiding and abetting. (N.T. 5–192).

 Next defendant objects to the statement, "He commits his crime in the hours or days before by quietly being fixed so that he is not going to assure that the proper load goes on there." This sentence was preceded by the remark, ". . . Mr. Casper commits his crime, *if indeed he commits it*, . . ." (N.T. 5–99) (emphasis added). Construing the language in the light most favorable to the defendant, however, it is reasonable to interpret it as a remark about some other evidence, not presented to the jury, but in the prosecutor's knowledge which indicated that the defendant had indeed been "fixed." Any such inference by the jury, if it did occur, was cured by the instruction given the jurors about just such remarks.[5] See United States v. Furtney, 454 F.2d 1 (3rd Cir. 1972) at 2, n. 1.

The fifth objection concerns the statement:

> Well, the evidence you have is, ladies and gentlemen, that he failed to do his job to such an extent, such a gross extent that it is beyond any possible boundary of reasonable human error, beyond anything.

Defendant claims that this gave the jury the impression that Casper's failure to act was sufficient to convict him of being an aider and abettor. This "impression", if it was of any substance at all, was cured by the charge, referred to at objection three above, and is rejected for the reasons there stated.

The sixth alleged error was the "we don't arrest and indict everybody" remark already disposed of in defendant Lucianetti's motion. I reject it as to defendant Casper for the same reasons and on the same basis.

 Objected remarks seven, nine and ten[6] contain references to the "missing witness" Mason. Nine and ten refer to statements made in the prosecution rebuttal and are rejected for the reasons stated above as to defendant Lucianetti's claim of error on the same point. Objection seven, however, goes to a remark made by the United States Attorney in his principal summation and not, as is the case with the other "missing witness" remarks, in the rebuttal as a "retaliatory" response. It can be and is, however, rejected on the same basis. It was the defense attorney, albeit defendant Lucianetti's counsel and not Casper's, who originally injected the trial with the question why Mr. Mason was never arrested (N.T. 4–130, 131). I find that this remark was therefore proper under the total circumstances.

The eighth objection is essentially the same as number four and is rejected on the same basis.

 The tenth remark objected to contains the words, "If he is off by one or two, my lord, what do you think we are, Nazis. We do not prosecute people for that." Defendant charges that this is a comment to the jury that the defendant is guilty, a judgment based upon the prosecutor's experience, and that the government does not prosecute a man unless he is guilty. This wrenches the remark out of context. It is a response to the argument raised by de-

---

5. I instructed the jury that " . . . if the attorneys in their closing arguments or in their opening statements stated something to you that you do not find to have been established by the evidence . . . ac-

cept your own recollection because that is your duty." (N.T. 5–169, 70).

6. The "Nazi" element of objection ten is considered below.

fense counsel in his summation (N.T. 5–127). It is rejected for the reasons stated in the discussion about retaliatory remarks in defendant Lucianetti's motion for new trial, *supra*.

The eleventh alleged error is clearly wrenched out of context, at least insofar as defendant would have us interpret it.

Finally, defendant suggests that the United States Attorney's final remark contains not only the implication that the prosecution "believes in Casper's guilt but he invites the jury to rely on his experience in prosecuting criminals generally and on the attorney general's sincerity."

▆▆▆ I think it is abundantly clear that the prosecutor was placing his "trust" in the ability of the jury to look at the evidence and weigh "that against the standard of your own common sense" to work out any questions they might have in their minds. There is absolutely nothing objectionable about that remark. He then went on to say, "[a]nd if you do that I will be looking for you in a little while to come back with a guilty verdict on all counts." Assuming arguendo that this comment was impermissible, it was nonetheless harmless in light of the instruction given to the jury about the limited nature of a closing argument. (N.T. 5–169). *See* United States v. Smith, 441 F.2d 539, 540 (9th Cir. 1971).

5. *The Purported Prior Felony Conviction*

▆▆▆ Defendant Casper was asked by the prosecutor whether he had ever been convicted of a felony. There was an immediate objection and a side-bar conference (N.T. 4–110–4–114). The United States Attorney attempted to bring out convictions for theft from interstate shipment and an unrelated conviction for assault and battery, indecent assault, aggravated assault and battery, sodomy and assault with intent to ravish. The latter conviction was excluded by the court as being too remote and unrelated for proper impeachment of the witness and too prejudicial as well. The prosecutor was allowed to question the witness about the theft from interstate shipment conviction upon a plea of guilty.[7] It is now argued, however, that the offense was a *misdemeanor* and not a felony, and that the "certified copy of conviction" was actually a plea of guilty.[8] Assuming as seems proper that the 1964 offense was a misdemeanor, it was nonetheless admissible for the purpose of impeachment.

In United States v. Gray, 468 F.2d 257 (3rd Cir. 1972), the court restated the rule for this circuit:

The rule has long been established in this Circuit that a conviction which may be used to impeach a witness must be of a crime which is a felony *or* a misdemeanor amounting to *crimen falsi*, viz., dishonesty or falsehood. At p. 9 (emphasis in original).

In United States v. Evans, 398 F.2d 159, 164 (3rd Cir. 1968), the court referred to a Pennsylvania Supreme Court case for a definition of offenses amounting to *crimen falsi*. Commonwealth v. Jones, 334 Pa. 321, 323, 5 A.2d 804, 805 (1939), cited by the Third Circuit, repeated the definition from an earlier case:

The term [crimen falsi] involves the element of falsehood, and includes everything which has a tendency to in-

---

7. The suggestion by the defendant that it was incumbent upon the prosecutor to state to the jury or elicit from the defendant that defendant had pled guilty to that crime (Def. Casper's Brief in Support of Motion for New Trial, at p. 8) is without merit. This was a matter for defense questioning on re-direct.

8. It is clear from the Indictment (Criminal No. 21652) that defendant Casper was charged with knowingly and unlawfully embezzling, stealing, taking and carrying away certain freight valued at less than $100.00. United States v. Gordon, 253 F.2d 177, 179–180 (7th Cir. 1958), states that if the value of the goods in question in a § 659 prosecution does not exceed $100.00, the offense is a misdemeanor. It is interesting to note, however, that the sentencing judge apparently regarded a "felony" sentence as being possible. (Change of Plea, N.T. 1).

juriously affect the administration of justice by the introduction of falsehood and fraud.

The *Jones* court quotation came from Commonwealth v. Schambers, 110 Pa.Super. 61, 167 A. 645 (1933), wherein it was pointed out that "the term 'crimen falsi' is not well defined at common law. Its extent and meaning is nowhere laid down with precision, but it generally applied to crimes which disqualified a person as a witness." (at 63–64, 167 A. at 646). The *Schambers* court went on to note that "cheating, deceit, or a similar fraudulent transaction, comes within the meaning of crimen falsi, as it involves moral turpitude." (cit. omitted) (at 65, 167 A. at 646).

 In the 1964 case defendant Casper pleaded guilty to embezzlement *inter alia*, an offense which is clearly a fraudulent transaction. He was therefore convicted of a misdemeanor in the nature of crimen falsi, and this conviction could properly be used to attack credibility.

It should be further noted that the defendant himself called the conviction a felony and while a layman is not to be held to the standard of knowledge expected from a member of the bar, his counsel did not pursue the matter any further on re-direct.[9]

In addition, the charge (at N.T. 5–180, 181) carefully restricted the part that this "possible" felony conviction should play in the jurors' determination of the issues.

Under all the circumstances, there was no error in permitting the previous conviction to come in and only harmless error in its being mislabelled as a "felony."

## CONCLUSION

Defense counsels' exhaustive examination of the transcript of the five day trial raises three basic issues. First is the sufficiency of the evidence. Second are the claimed intemperate remarks by the prosecutor in his closing. Third, the asserted error in permitting the defendant Casper to be cross-examined concerning a prior conviction for stealing or embezzling property moving in interstate commerce where the value of the goods taken was such as to constitute the offense a misdemeanor rather than a felony. The last two issues were not raised during the trial.

 This case, relying heavily on circumstantial evidence, certainly did not present the strongest possible chain of events pointing toward conviction. Nevertheless, there was sufficient evidence for submission to a jury. Both defendants, capably represented by counsel of their own choosing, took the witness stand in their own behalf. The jury chose not to accept their versions of innocent conduct. Under the rule in United States v. Calderon, 348 U.S. 160, 164, n. 1, 75 S.Ct. 186, 99 L.Ed. 202 (1964), the fact that these defendants took the stand provided corroboration for essential elements of the Government's case and they thereby waived their objections to the court's denial of their motions for acquittal. *See* McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); United States v. Finnerty, 470 F.2d 78 (3rd Cir. 1972) (Gibbons, J., dissenting at 83).

Recollection of the actual trial leads me to conclude that although several of the prosecutor's closing remarks would have been better if left unsaid, none singly nor all cumulatively were so extreme as to require the trial judge on his own initiative to interrupt and caution counsel. The charge tried carefully to instruct the jury to decide the issues objectively and unemotionally. Defense counsel, both experienced trial lawyers, apparently did not consider the remarks of sufficient gravity to move for a mistrial or even to request a corrective instruction to the jury. One should never attempt to ascertain the precise reasoning process by which twelve jurors

---

9. *Cf.* United States v. Savage, 470 F.2d 948 (3rd Cir. 1972).

unanimously determine a defendant's guilt. I am convinced, however, that in this case, those determinations were reached by proper considerations and in no way "inflamed" by closing statements of the Assistant United States Attorney.

A review of the record alone might well cause one to conclude that defendants are entitled to a new trial. I am, however, convinced that the trial was a fair trial in which the defendants were afforded fully all those safeguards to which all persons charged with crime are entitled. The verdict of the jury was justified under the evidence and the law, and therefore should, under all the circumstances, stand.