UNITED STATES of America

v.

James Allen BARBER et al.

Appeal of Calvin Jerome LOPER.

No. 18308.

United States Court of Appeals,
Third Circuit.

Argued March 31, 1970.

Decided July 20, 1970.

Rehearing Denied Oct. 9, 1970.

Richard E. Poole, Potter, Anderson & Corroon, Wilmington, Del., for appellant.

Norman Levine, Asst. U. S. Atty., Wilmington, Del. (F. L. Peter Stone, U. S. Atty., Wilmington, Del., on the brief) for appellee.

Before HASTIE, Chief Judge, and MARIS and ADAMS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

The appellant Calvin Loper was tried jointly with twelve other defendants under an indictment charging him with assaulting, or aiding and abetting an assault on Frank Grant, an F. B. I. agent, with a dangerous weapon, namely a shoe, in violation of 18 U.S.C. § 111 (1964); with assaulting or aiding and abetting an assault on James Snyder, an F. B. I. agent, also in violation of 18 U. S.C. § 111; with conspiring to prevent by force, intimidation, and threats the two agents from performing their official duties, in violation of 18 U.S.C. § 372 (1964); and with aiding and assisting the escape of the prisoner, in violation of 18 U.S.C. § 752(a) (Supp. I, 1965). At the conclusion of a three week trial, Loper was found guilty on all four counts and sentenced to prison terms aggregating fifteen years.[1] On this appeal it is contended that the trial court erred in denying appellant's motion for acquittal notwithstanding the verdict or for a new trial. D.Del.1969, 303 F.Supp. 807.

The record shows that during the afternoon of October 29, 1968 special agents Frank Grant and James Snyder of the Federal Bureau of Investigation engaged in a search for an army deserter in Wilmington, Delaware. The alleged deserter was apprehended in the home of his mother àt 2209 Pine Street, Wilmington at approximately 3:30 p. m. As the agents left the house with their prisoner and turned up Pine Street toward their car on Twenty-second Street, a group of approximately fifteen men walked down Pine Street toward them and came face to face with them at or near the corner of Twenty-second and Pine. The agents walked to within five feet of the group and stopped briefly. Grant removed his credentials from his pocket, held them out before him and stated, "F. B. I. We have a man in custody. Make room for us to pass." The group was informed that the prisoner was a deserter being returned to the army, and warned that anyone interfering would be arrested for assaulting a Federal officer. Immediately after saying this, the agents proceeded forward and were attacked by several individuals from the group.[2] In the course of the affray, which lasted only a few minutes, agent Grant was knocked down and kicked severely in the side of the face and the prisoner escaped.

We consider first whether there was any evidence from which the jury might properly have found that Loper assaulted either of the F. B. I. agents. Only two witnesses, Catherine Butler Wright and Deborah Price, gave testimony that could be thought to lend any support to such a finding.

Catherine Wright, a passerby at the time of the affray, testified that one of the persons she saw on top of an agent was "a guy by the name of Loper." However, she then stated that "Loper's"

---

1. He was sentenced to imprisonment for 10 years on count I, 5 years on count II, 5 years on count III and 5 years on count IV, the sentence on count II to run concurrently with that on count I

and· the sentence on count IV to run concurrently with that on count III.

2. The testimony indicates that three or four persons assaulted each officer.

first name was "Marvin" and described the individual to whom she was referring as a light-skinned Negro, in contrast to the appellant who is very dark. On cross examination, when shown a group of photographs in which appellant Calvin Loper's was prominently displayed, Miss Wright stated emphatically that a photograph of the "Marvin" to whom she had referred was not included. Moreover, she did not recognize the appellant in the courtroom. We must conclude, as the prosecutor conceded during a side-bar conference, that "Catherine Butler Wright did not identify defendant Loper." Rather, she incorrectly used the name Loper in an effort to identify a person other than the appellant.

[1] The one other witness who in any way implicated the appellant in the fighting was a 15 year old girl, Deborah Price, who first named three persons other than the appellant as persons who were holding one of the agents. She then changed her story and named "Calvin Loper" as one of the three. However, Miss Price failed to identify the appellant either from photographs or in the courtroom. Indeed, on cross examination she positively identified the photograph of another individual, Bootsie Burton, as that of the "Calvin Loper" she had seen holding one of the agents. It is not surprising, therefore, that on argument of a post-trial motion the prosecutor remarked that the jury "probably placed very little reliance on the testimony of Miss Price." But whatever the jury may have done, it is clear on the record and we now hold that the testimony of Deborah Price had no probative value as evidence that the appellant assaulted either of the agents.

We also have observed that in sentencing Loper, the court said to him: "[t]here is evidence that you kicked the agent." At the argument of this appeal the government conceded that there was no such evidence, and we have found none. The understandable mistake of the able and conscientious trial judge serves merely to show how confusing it is when many defendants are subjected to a long mass trial throughout which bits and pieces of evidence about different defendants are scattered in a disorganized way. Even an experienced trial judge finds it very difficult accurately to marshal and weigh the proof against each of the accused.

Since the record does not justify a finding that Loper joined in the criminal attack upon the F. B. I. agents, we must consider whether the record shows that he did anything short of physically assaulting the agents that justifies his conviction.

Although even the appellant's alleged presence at the scene of the crime was disputed, three witnesses did identify him as a member of the group of about fifteen persons that confronted the agents just before the attack upon them. Thus, the jury could properly find that Loper was then present. But beyond that, there is no evidence when or why he joined the group. There is no proof of threatening words or gestures, or a display of weapons, or other sinister action by Loper or by any other member of the group in his presence before the sudden outbreak of fighting. There simply is nothing in the record that can serve to associate Loper with a purpose or design to act unlawfully, or to show that he in any way encouraged or facilitated the resort of others to violence. And finally, there is no probative evidence as to what Loper did after the officers identified themselves and immediately tried to pass through the crowd. There is no showing that, during the brief interval between the identification of the officers and the affray, Loper had an opportunity to withdraw from the crowd, or even assuming such opportunity, that he failed to do so.

■ The case against Loper must stand or fall solely upon the fact that he was one of the group that approached and confronted the officers just before the outbreak of violence. In this connection, it is to be remembered that two strange men in plain clothes had re-

moved a young man from his mother's home and were proceeding down the street with him in custody. Such an occurrence is likely to arouse the interest and concern of neighbors, visitors and even casual passers-by. It is likely to draw a crowd, including both the idly curious and those concerned to discover why and by what authority the young man is being taken away. Whether Loper joined the group here in question because of such concern, or out of curiosity or, as is possible, with some more aggressive intention, the record does not in any way indicate. Thus any conclusion that Loper was bent on mischief or that he was encouraging wrong-doing by others is entirely speculative and cannot provide a proper basis for a criminal conviction.

■ This conclusion finds ample support in case law. In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort [sic] associate himself with the venture, [i. e., the criminal enterprise] that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." United States v. Peoni, 2d Cir. 1938, 100 F.2d 401, 402, quoted with approval in Nye & Nissen v. United States, 1949, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919.[3] Therefore, mere presence at the scene of a crime, even in the company of one or more principal wrongdoers, does not alone make one an aider or abetter. Hicks v. United States, 1893, 150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137; United States v. Garguilo, 2d Cir. 1962, 310 F.

2d 249; Hendrix v. United States, 5th Cir. 1964, 327 F.2d 971.

■ In addition, the conduct of the individual charged or other special circumstances attending his presence must be such as to show that he has associated himself with and participated in the criminal undertaking. Something of significance beyond the fact of presence is necessary to justify a conviction.[4] This requirement is an essential safeguard against the ever present danger of assuming the complicity of all in attendance whenever group activity is involved, and specially when many members of a group, actors as well as onlookers, are tried together. The courts have the responsibility to make sure that mere speculation is not permitted to substitute for proof in such cases. In the circumstances of the present case, any conclusion that Loper was aiding and abetting criminal misconduct was wholly speculative.

■ The deficiencies of the present record that preclude a finding of aiding or abetting also preclude a finding that Loper was a conspirator. In this connection it is particularly noteworthy that there is no evidence of anything said or done by Loper or in his presence before the assault that associates him with a criminal design. Neither was the jury informed of anything said or done by Loper during or after the brief affray from which his earlier adherence to a conspiratorial scheme of wrongdoing could logically be inferred.

It follows that there was no case against Loper sufficient to go to the

---

3. This statement of the law was properly included, almost verbatim, in the court's instructions to the jury.

4. Thus, the fact that an individual has served as a lookout during the commission of a crime is a clear indication of participation in the wrongdoing. Long v. United States, D.C.Cir. 1966, 360 F.2d 829. Verbal encouragement of an assault has been held sufficient evidence of complicity in the wrongdoing. Kuney v. Dutcher, 1885, 56 Mich. 308, 22 N.W. 866. Those who make no assault but undertake to intimidate the victim and block his escape are criminally associated with a robbery. Williams v. United States, D.C.App.1963, 190 A.2d 269. Flight from the scene of the crime with the actual perpetrators has been said to justify the same inference. Corbin v. United States, D.C.App.1968, 237 A.2d 466. Even remaining with a group after disclosure of the intention of members of the group to commit a crime has been held to be sufficient evidence of association with the criminal venture. People v. Hill, 1968, 39 Ill.2d 125, 233 N.E.2d 367.

jury on any count. Therefore, his posttrial motion for a judgment of acquittal should have been granted.

The judgment will be reversed.