**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bobby Gene BARFIELD, Defendant-
Appellant.**

**No. 30675.**

United States Court of Appeals,
Fifth Circuit.

May 28, 1971.

Milton E. Grusmark, Miami Beach, Fla., Ct. Apptd., for defendant-appellant.

Robert W. Rust, U. S. Atty., V. Eskenazi, George A. Kokus, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before WISDOM, BELL, and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

Bobby Gene Barfield was charged, along with three others, with forcibly attempting to break into the United States Post Office at Hallandale, Florida, with intent to commit larceny, in violation of 18 U.S.C. §§ 2115 [1] and 2.[2]   He pleaded

---

1.  § 2115.  Post Office
    Whoever forcibly breaks into or attempts to break into any post office * * * with intent to commit in such post office * * * any larceny or other depredation, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2.  § 2.  Principals
    (a) Whoever commits an offense against the United States or aids, abets,

not guilty, waived trial by jury, and went to trial before the district court. The court found him guilty as charged and sentenced him to serve a three-year term in the custody of the Attorney General.[3]

On appeal Barfield presents three contentions. He argues first that the grand jury which indicted him was improperly constituted, in that the master jury list systematically excluded one segment of the population—all persons who were 21 and 22 years of age. Such persons were excluded not because of any inherent defect in the federal Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., but because the master jury list used in the Southern District of Florida had not been revised since June of 1968. Thus all persons who reached the age of 21 since that date have been excluded from jury service. Second, Barfield argues that the search of the automobile in which he was riding was unreasonable and that the evidence obtained from the search should not have been admitted. Finally, Barfield contends that the court erred in failing to grant his motion for judgment of acquittal on the ground that the evidence was insufficient to support his conviction.

Because we agree that the lack of substantial evidence to support the guilty verdict requires reversal of Barfield's conviction, we do not discuss the first two contentions.[4]

Taking the view most favorable to the Government, as is the rule in an appeal from a denial of the motion for judgment of acquittal, the Government's case against Barfield was as follows. On the evening of March 22, 1970, Merle Day, a retired policeman who lived on the street immediately behind the Hallandale post office, saw two men drive a Mercury stationwagon into the vacant lot next to the post office, park the car, and get out. When the men walked to the front door of the post office, Day became suspicious and walked over to investigate. The license number of the Mercury made it evident to him that the car had been rented. As he approached the front door of the post office, the two men came out of the post office [5] and walked by him. He then noted that one of the men had a beard and wore a blue shirt; the other was taller and had dark hair. The Government admits that neither man was the defendant Barfield. The two men walked across the street to the Plaza Inn, but soon returned to the post office. Day then got in his car and drove around the post office a few times. He finally saw the two men come back out of the post office and disappear. A few minutes later, the two men came out of the Plaza Inn, got in the Mercury, and drove it back to the Inn. At that time two other men drove up in a red Austin Healey Sprite and talked with the two men in the Mercury. Day could not, however, identify Barfield as one of the occupants of the Sprite. The men in the two cars then began circling the post office in opposite directions. At one point they stopped near Day's house and talked with one another. Day then called the local

---

counsels, commands, induces or procures its commission, is punishable as a principal.

3. Following Barfield's conviction and sentencing, the district court granted the Government's motion to dismiss the charges against Barfield's three codefendants.

4. We note, however, that this Court has recently passed on a question quite similar to Barfield's first contention. See United States v. Kuhn, 5 Cir. 1971, 441 F.2d 179. There Judge Ainsworth, for the Court, concluded that the exclusion of 21–23 year olds from the master jury wheel in the Northern District of Florida because of the failure of the court to revise the list annually did not violate the Jury Selection and Service Act or the Constitution. Id.

5. It may be wondered how the two men got into the post office after it had closed that evening. Keith L. Douds, an employee of the Hallandale post office, explained that even after working hours a portion of the post office remains open so that patrons may deposit mail or pick up mail from their post office boxes. Thus the two men were able simply to open the front door and walk into the area of the post office where the boxes were located.

police and gave them a description of the two cars.

Another Government witness testified that he entered the Plaza Inn at about 9:15 that night and observed Barfield playing pool and talking with two other men. One of the men with whom Barfield talked was one of the men whom Day had seen going in and out of the post office. The witness estimated that Barfield was there at the Inn for about an hour. He did not see when or with whom Barfield left.

Donald Fry, a Hallandale police officer, testified that at about 10:15 that night he received word from the dispatcher to be on the lookout for a Mercury stationwagon, Florida license number 4E-3915, in the vicinity of the post office. He soon found the vehicle parked on the street about a block from the post office. There were four men in the car. One of the men, who had a beard, got out of the car and began walking toward the post office. Fry then radioed other officers to follow the pedestrian. Fry himself followed the Mercury, which headed east in the wrong lane of traffic. After about five blocks, the Mercury stopped at a traffic light, and the driver got out of the car and deposited a package in the rear of the stationwagon. Fry drove up to the Mercury, got out of his car, and approached the driver. Passing the back window of the stationwagon, he observed what he thought to be the butt of a gun in the rear of the car. He asked the driver for his driver's license. While the driver searched for his license, another police officer arrived on the scene. Unable to find his license, the driver asked Barfield, who was seated in the front seat on the passenger side, to look in the glove compartment. The other officer closely watched Barfield open the glove compartment, inasmuch as Fry had warned him that there appeared to be a gun in the car. When the driver finally could not produce a driver's license, he was arrested for driving without a license and "illegal lane usage." The officers asked Barfield and the passenger seated in the back seat to get out of the car. Fry walked to the back of the stationwagon and picked up the gun he had seen through the rear window. The gun was loaded. The officers then arrested all three men for illegal possession of the gun. When asked, Barfield gave his name to the officers as "Charles Johnson." From the back of the stationwagon Fry also seized a pair of gloves and a "walkie-talkie." The other officer observed a white bag on the floor of the back seat. Thinking that the bag contained a shotgun, he seized it. After arresting and handcuffing the passengers, he opened the bag and found numerous tools.

Meanwhile, a third Hallandale police officer was watching the man with the beard walk toward the post office. As the man approached the post office, the officer stopped him and arrested him. This same officer also observed the red Austin Healy Sprite parked near the Plaza Inn. An "inventory" of the car revealed another "walkie-talkie."

Two days later post office employees found some tools lying in a flower bed near the post office. Their testimony placed the flower bed at about the spot where the man with the beard had been stopped and arrested two nights before. The policeman who was watching the suspect that night and who made the arrest, however, testified that he did not observe the man drop anything in that vicinity.

An inspection of the inner door to the post office [6] conducted late that night after the four men had been arrested disclosed tool marks. The door, paint samples from the door, and the seized tools were then sent to a laboratory in Washington, D.C., for analysis. A Gov-

---

6. Douds (*see* note 5 *supra*) testified that the inner door was a Dutch door that separated the public area of the post office from the employees' work area. The door had three locks—one for the top half of the door, one for the bottom half, and a bolt to lock the two halves together. The door was always locked when the post office employees left for the night.

ernment chemist testified that one of the seized tools made the tool marks on the door and that the paint found on the door and the paint scrapings on one of the tools were the same. The chemist, however, could not say when the tool marks were made on the door. A postal inspector also reported that he found no fingerprints on the door or on the tools.

■■ It is of course true that on appeal from a denial of the motion for judgment of acquittal we must sustain the verdict of guilty if there is substantial evidence, taking the view most favorable to the Government, to support it. United States v. Glasser, 1944, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704. "Substantial evidence" in this context means evidence that a reasonably minded jury—or judge in a nonjury trial—could accept as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. United States v. Reid, 5 Cir. 1971, 441 F.2d 1089; United States v. Warner, 5 Cir. 1971, 441 F.2d 821. In the circumstances of this case we cannot conclude that substantial evidence supports the trial court's verdict.

■ The Government does not contend that Barfield himself attempted to break into the Hallandale post office. The theory of the Government's case is that Barfield aided and abetted the actual commission of the crime by the other defendants. In order to sustain Barfield's conviction for aiding and abetting, the Government's evidence must be such as to allow the court to conclude beyond a reasonable doubt that Barfield associated himself with the commission of the crime, that he participated in it with a desire that it be accomplished, and that he committed some overt act designed to make it a success. See, e. g., United States v. Joiner, 5 Cir. 1970, 429 F.2d 489, 493; United States v. Barber, 3 Cir. 1970, 429 F.2d 1394, 1397; Bailey v. United States, 1969, 135 U.S.App.D.C. 95, 416 F.2d 1110, 1113; White v. United States, 10 Cir. 1966, 366 F.2d 474, 476. In other words, the Government must show that Barfield shared the criminal intent or purpose of the actual perpetrators of the crime and that he knowingly assisted them in the accomplishment of that purpose. United States v. Joiner, supra; United States v. Varelli, 7 Cir. 1969, 407 F.2d 735, 749.

In this case there was no direct evidence tending to show that Barfield had any criminal purpose or that he knowingly acted to further that purpose. Indeed, the only evidence linking Barfield with the attempt to break into the post office was that he was seen in a tavern across the street from the post office playing pool and talking with a man who had been seen going in and out of the post office that night and that he was later found in a car driven by that same man and in which numerous heavy tools were also discovered. It is well established, however, that merely being found at or near the scene of the crime or in the company of a person engaged in crime is, without more, not sufficient evidence that one is an aider and abettor. United States v. Joiner, supra; United States v. Barber, supra; United States v. Garguilo, 2 Cir. 1962, 310 F.2d 249, 253.

The Government argues that it is reasonable to infer Barfield's criminal purpose and knowing assistance from the circumstances of this case. We cannot agree. There are simply too many gaps in the Government's case. No one saw Barfield enter the post office that night or stand guard while the other suspects broke in. No one could identify Barfield as an occupant of the two cars that kept suspiciously circling the post office. No one overheard the substance of any of Barfield's conversations with the other suspects. No one could connect Barfield with the tools that were found in the Mercury stationwagon: the tools were found on the floor of the back seat and Barfield was riding in the front seat. No one ever saw him handle the tools and his fingerprints were not found on the tools. We are not so naive as to exclude a possible inference from his association with the other suspects that Barfield knew of the alleged criminal design. It is impossible, however, to infer beyond

a reasonable doubt from the mere fact of association—and that is all the evidence the Government has in this case—that Barfield shared a criminal design of the co-defendants and in fact assisted them in the accomplishment of that design.

■ Moreover, there is even doubt in this case that a crime was actually committed. While the conviction of the principals is not a prerequisite to the conviction of an aider and abettor, the Government must nevertheless establish beyond a reasonable doubt that the alleged offense was committed by someone and that the person charged as an aider and abettor assisted in the commission of the crime. *See, e. g.*, United States v. Thoreson, 9 Cir. 1970, 428 F.2d 654, 665; Hendrix v. United States, 5 Cir. 1964, 327 F.2d 971, 975; Colosacco v. United States, 10 Cir. 1952, 196 F.2d 165, 167. It is true that there were tool marks on the inner door of the post office and that some of the tools found by the police in the Mercury stationwagon bore paint scrapings similar to the paint on the post office door. Yet there was no evidence *when* those marks were made on the door. And Barfield argues that since his co-defendants had been involved in another post office breaking, for which they were convicted and with which he had nothing to do, it is equally plausible to infer that the paint scrapings on the tools were acquired during the commission of that offense. Indeed, no one ever saw the other suspects in this case carry into or out of the post office that night tools or a bag in which tools could have been concealed. The officer who was watching the suspect with a beard walk toward the post office late that night did not testify that he saw the suspect carrying any tools. On the contrary, he testified that he did not observe the suspect drop anything near the spot where he was arrested (and where the tools were found two days later). Moreover, no fingerprints of any kind were ever found on the tools or on the door of the post office.

Therefore we conclude that in the circumstances of this case the Government's evidence was insufficient to support Barfield's conviction for aiding and abetting a breaking into the Hallandale post office with intent to commit larceny. The district court should have granted Barfield's motion for judgment of acquittal.

The judgment of the district court is reversed and the case is remanded with instructions to dismiss the indictment.