**UNITED STATES of America**

v.

**Michael NEWMAN and Frank X. Gaca.**

**Appeal of Frank X. GACA.**

**No. 73–1664.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 8, 1973.

Decided Jan. 8, 1974.

Allen N. Brunwasser, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., Kathleen Kelly Curtin, James J. Orr, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

### I.

Frank X. Gaca and Michael E. Newman were indicted for wilfully intercepting, endeavoring to intercept and procuring another to intercept a wire or oral communication in violation of 18 U.S.C. § 2511(1)(a)[1] and 18 U.S.C. § 2,[2] and for disclosure of the contents of said communication in violation of 18 U.S.C. § 2511(1)(c). A third defendant, Thomas Nee, indicted for his participation in the illegal wiretap, pleaded guilty and testified for the government.

---

1. 18 U.S.C. § 2511 provides:

Except as otherwise specifically provided in this chapter, any person who (a) willfully intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept, any wire or oral communication; [or] . . . (c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this section . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 2 provides that:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

The government's case against Gaca and Newman was severed, and Michael Newman proceeded to trial first. Newman's conviction was recently affirmed by this Court in United States v. Newman, 476 F.2d 733 (3d Cir. 1973). After the trial court dismissed the disclosure count (18 U.S.C. § 2511(1)(c)) against Gaca, the jury found Gaca guilty on the first count (violation of 18 U.S.C. §§ 2 and 2511(1)(a)). Gaca was subsequently sentenced.

In his appeal Gaca has advanced a number of alleged errors which he claims require a reversal of his conviction. We find merit in several of his contentions, and accordingly we reverse.

## II.

On appeal from a verdict of guilty, this Court must view the testimony, and the inferences drawn therefrom, in the light most favorable to the government. United States v. McLain, 469 F.2d 68, 69 (3d Cir. 1972). The testimony at trial indicated that Thomas Nee and Frank X. Gaca were partners in a general wiretap business. They owned wiretap equipment valued at approximately $800. The government demonstrated that Thomas Nee, acting pursuant to a conversation with Michael Newman, placed a recording device on the telephone wire of one Eugene O'Neill on March 3, 1970. That evening, Nee informed Gaca that their equipment had been put to use "for Mike Newman". Nee gave Gaca the precise location of the recording device and received no objection from Gaca. On each of the following three days, Nee obtained tapes from the recording device and played them for Newman. Nee apparently kept Gaca informed of the progress of the O'Neill wiretaps through nightly telephone conversations.

On March 8, 1970, Nee *and* Gaca played the wiretap tapes in Newman's presence. After leaving Newman, Gaca drove Nee back to the telephone pole to which the O'Neill tap had been affixed,

and prepared the equipment for placement back on the pole. Nee put the recorder on the pole, in position for further wire interceptions. Later that evening, the device was discovered by passers-by, Nee having inadvertently left the device on "broadcast."

## III.

### A.  *Instructions on Wilfulness*

Count I of the indictment charges that Gaca violated 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2 by wilfully procuring "another person" to intercept wire communications. Apparently conceding that the district court properly instructed the jury with regard to the element of wilfulness in 18 U.S.C. § 2511(1)(a), Gaca argues that the court erred in failing to charge the jury that aiding and abetting is actionable only if done wilfully.[3] As appellant correctly notes, the aiding and abetting statute, 18 U.S.C. § 2, has been construed to require a specific intent to bring about a criminal act. *See* United States v. Barfield, 447 F.2d 85, 88 (5th Cir. 1971); United States v. Barber, 429 F.2d 1394, 1397 (3d Cir. 1970).

The trial judge's instructions on the element of wilfulness are set forth in the Appendix to this opinion. It is apparent that while the court specifically directed the jury to consider wilfulness as an element of an offense under 18 U.S.C. § 2511(1)(a), no such instruction was offered with regard to the aiding and abetting statute. The government, admitting that specific intent is required under 18 U.S.C. § 2, contends that the instructions' focus on "participation" satisfies the *mens rea* element. We do not agree.

Consistent with the court's instructions, the jury might have convicted Gaca on the basis of a conclusion that the defendant participated in the activities charged without knowing of their criminal objective. Unknowing participation is not sufficient to constitute an

3.  A timely objection was made to the charge. (Tr. 590)

offense under the aiding and abetting statute. Rather, the government must prove beyond a reasonable doubt that the defendant participated in a substantive crime *with the desire that the crime be accomplished.* *See* United States v. Barfield, *supra,* 447 F.2d at 88.

The failure of the district court to instruct that Gaca could be convicted of aiding and abetting only if the jury found wilful participation constitutes error.

### B. *Evidence of the Newman Conviction*

Before Gaca's trial began, the witness Thomas Nee was instructed not to mention the fact that Michael Newman, a co-defendant, had already been convicted on the wiretapping charge. Nevertheless, on cross-examination, Nee referred to the Newman conviction.[4] Gaca's counsel made no motion to strike but rather confined his objection to the suggestion that the court instruct the jury that it should disregard Newman's conviction in determining Gaca's guilt. On appeal, Gaca challenges the sufficiency of the instructions eventually given.

■ Unquestionably, Gaca has a right "to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." United States v. Toner, 173 F.2d 140, 142 (3d Cir. 1949). Thus, guilty pleas and convictions of co-defendants are not admissible to demonstrate the guilt of defendants yet to be convicted. United States v. Restaino, 369 F.2d 544, 545 (3d Cir. 1966). However, unless undue emphasis is placed upon such evidence, the admission of such evidence is not reversible error, provided that cautionary instructions are given. United States v. Restaino, 369 F.2d at 545.

■ Appellant argues that the court did not render the cautionary instructions required by *Restaino.* The government responds by citing the following instruction, offered by the District Judge:

"Now, it is also very important, and I wish to emphasize this very earnestly, that your task here is confined to passing upon the guilt or innocence of this defendant for the charge with which he is here standing trial. In other words, there has crept into the case a lot of collateral matters about other legal proceedings against other defendants such as Nee and Newman as to desertion and non-support cases or similar family troubles of the witness and supposed other offenses of which the witness has supposedly been perhaps guilty or with respect to which he has claimed the protection of the Fifth Amendment, and all of these matters are side issues not to confuse you when you come to your actual main task here of passing upon the guilt or innocence of the defendant Frank Gaca concerning the offense with which he is here and now on trial. You are not to speculate about

---

4. At the time that Nee mentioned the conviction, defense counsel was questioning Nee about perjury charges brought by Newman against the witness. The colloquy between defense counsel and witness Thomas Nee was as follows:

Q. Talking about embarrassment, aren't you trying to get the FBI to go after Thomas Livingston on some kind of idea that he's calling you up to change your testimony or something like that? How about that?

A. A couple months ago at work I had an anonymous phone call. We might as well get into the background of this. At sometime after Mr. Newman was found guilty here in this courtroom of wire tapping, he brought charges against me for perjury for lying in the first Federal grand jury. He brought these charges against me in I believe what they call the State courts and these charges have been postponed and rescheduled and postponed and rescheduled and ironically I believe they were heard yesterday down at the courthouse. (Tr. 285–286)

We find that the prejudicial testimony was introduced inadvertently. Defense counsel neither attempted to "inject" the prejudicial matter into the record nor manufacture reversible error. We therefore find the instant case to be distinguishable from the situation discussed in United States v. Panepinto, 430 F.2d 613, 616 (3d Cir. 1970).

any other matters and any evidence that has come in about such matters is collateral material that was received as being perhaps helpful in some respect in helping you to evaluate the weight to be given to the testimony that you have heard here concerning the pertinent question which is here for your decision." (Tr. 574–575)

This charge, which the government would have us view as curative, is imprecise on the issue of the Newman conviction. The charge dealt neither with the specific language nor with the jury's duty to disregard the testimony. The judge should have been more explicit in repudiating the testimony given. At the very least, the district court should have instructed that the testimony regarding Newman was no proof whatsoever of Gaca's guilt and that the testimony proferred should be disregarded completely in determining the guilt or innocence of Gaca.[5] *See* United States v. Aronson, 319 F.2d 48, 52 (2d Cir. 1963).

## C. *Nee's Assertion of His Fifth Amendment Privilege*

On cross-examination, witness Nee frequently asserted his Fifth Amendment privilege. The chart below outlines the context in which these assertions were made:

| page | question | purpose of question |
|---|---|---|
| 1) Tr. 195–197 | Nee was questioned as to how he had tapped his ex-girlfriend's phone. | to show that Gaca did not participate in all tappings performed by Nee. |
| 2) Tr. 199 | Nee was questioned as to whether he had committed any crimes other than those about which he testified on direct examination. | to impeach Nee's credibility. |
| 3) Tr. 255 | Nee was questioned as to whether he had received any money from wiretaps in 1970. | to impeach credibility. |
| 4) Tr. 257, 258 | Nee was questioned as to whether he had tapped the phones of: a) members of the underworld, and b) a man by the name of Lou Posick. | to show that Gaca did not participate in all tappings performed by Nee. |

On each of these instances, the trial court refused to compel Nee to answer defense counsel's inquiries.[6] Gaca contends herein that Nee's utilization of the privilege against self-incrimination deprived him (Gaca) of his Sixth Amendment right to confront witnesses and his Fifth Amendment right to a fair trial.

5. We note that at some point after the challenged testimony was introduced, the district judge stated, in the presence of the jury, that: "And the issue was specifically brought by you, Mr. Brunwasser, into the case, I remember, by asking the witness to read a certain statement aloud by paragraph in question referring to the Newman case so the jury will be instructed at the proper time that we are not concerned here with the Newman trial or the trial of the witness for any of the perjuries or other matters that have been mentioned in general. It's always desirable to avoid any reference whatever to other cases than the one on trial for fear of confusion, but it seems sort of inevitable apparently as I feared that there would be made some reference to it and it has been and will not harm anyone I trust so let's proceed with the next question." (Tr. 339–340).

This preliminary remark, even if regarded as an instruction, is as equivocal and noncurative as the charge given at the close of trial.

6. As to the first instance in which the Fifth Amendment privilege was asserted, the trial court acquiesced in Nee's refusal to answer on the grounds that the question was legally irrelevant. (Tr. 197). Although we perceive relevance in the question asked, we do not suggest that this ruling constitutes reversible error.

The Sixth Amendment right of confrontation requires appellate courts to reverse convictions where it appears that the cross-examination of government witnesses has been unreasonably limited. *See* United States v. Zambrano, 421 F.2d 761 (3d Cir. 1970). However, courts have recognized that in certain circumstances, reversal is not required when a government witness asserts the Fifth Amendment during cross-examination. *See, e. g.,* United States v. Cardillo, 316 F.2d 606, 611 (2d Cir.), cert. denied, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed. 2d 55 (1963); United States v. Kravitz, 281 F.2d 581, 588 (3d Cir. 1960); United States v. Smith, 342 F.2d 525, 527 (4th Cir.), cert. denied, 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434 (1965); United States v. Ginn, 455 F.2d 980 (5th Cir. 1972); United States v. Collier, 362 F.2d 135 (7th Cir. 1966); Coil v. United States, 343 F.2d 573, 579–580 (8th Cir.), cert. denied, 382 U.S. 821, 86 S.Ct. 48, 15 L.Ed.2d 67 (1965); United States v. Norman, 402 F.2d 73, 77 (9th Cir. 1968), cert. denied 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1968).

In *Cardillo, supra,* the Second Circuit developed firm guidelines regarding the limited circumstances in which a witness's Fifth Amendment assertion will be unassailable. The Court declared:

> In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of a privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witnesses and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used

against him. . . . On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part.

316 F.2d at 611. The distinction between collateral matters of credibility and matters directly related to the crime, drawn first in *Cardillo,* has been recognized by several circuits. *See, e. g.,* United States v. Smith, *supra* (4th Cir.); Fountain v. United States, 384 F.2d 624, 627 (5th Cir. 1967) (explaining that the real question is whether "defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony"); Coil v. United States, *supra,* (8th Cir.); United States v. Norman, *supra,* (9th Cir.).

The government argues that the questions which Nee refused to answer relate only to his credibility. To the extent that the questions do relate to credbiility, there would be no impropriety in allowing the assertion of the Fifth Amendment privilege. As Gaca admits in his brief, it was evident to the jury that Nee was, in general, an unsavory and untrustworthy character. Any further evidence impugning Nee's credibility would only be cumulative, the defense having emphasized Nee's lack of credibility throughout its cross-examination.

More troublesome is Nee's refusal to discuss prior wiretaps. Defense counsel indicated at trial, and re-affirms on appeal, that one of his purposes in asking about prior taps was to demonstrate that Gaca did not participate in previous taps conducted by Nee. A central element of the government's case was the alleged partnership arrangement

between Nee and Gaca.[7] It would have been plausible for the jury to infer from this arrangement the conclusion that if Nee participated in a tap, his partner (Gaca) too would have participated. Apparently, it was the purpose of defense counsel's questions (regarding prior taps) to undermine this inference by demonstrating that Nee often acted independently.

In *Cardillo,* the Second Circuit indicated that where the subject matter of the answer is connected with only one phase of the government's case, the proper response is to cause a *partial striking* of the witness's direct testimony. Given the strength of the inference flowing from the testimony regarding the alleged partnership, Gaca should have been permitted to question Nee fully on the operation of the partnership. The witness's refusal to permit questioning on this topic should have led to a striking of the testimony regarding the partnership. Failure to cause a partial striking constituted an unreasonable limitation of Gaca's Sixth Amendment rights, and is, therefore, error.

D. *Testimony Regarding Leniency to Nee.*

1. *Calling the prosecutor as a witness*

■ Gaca urges that his Sixth Amendment rights were also violated when the court denied him the opportunity to call the U.S. Attorney as a witness. Although no offer of proof was made at trial, it is apparent that defense counsel hoped to elicit evidence of bargains with Nee, thereby contradicting the witness's denial of same and establishing a defense under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972).

A similar request was made by Michael Newman in his trial. This Court (over the dissent of Judge Gibbons) upheld the same District Judge's refusal to compel testimony by the U.S. Attorney, stating that:

"Although this court has consistently held that defense counsel has available the right to show that the testimony of a Government witness was given in reliance on a promise of a lighter sentence, or other preferential treatment. . . . the district court has wide discretion with respect to the examination of witnesses. . . . It may properly refuse to allow the defense to call the prosecutor if it does not believe that 'he possesses information vital to the defense.' Gajewski v. United States, 321 F.2d 261, 268–269 (8th Cir. 1963). . . ."

United States v. Newman, 476 F.2d at 733.

The above case is not only controlling on the standard to be applied, but is also determinative of the outcome with regard to this portion of Gaca's appeal. Gaca asserts that statements brought to the attention of the trial judge in *Newman* indicate that the government may have bargained with Nee. These were the very statements considered by this Court in *Newman.* If this Court felt that it was reasonable for the district judge to disbelieve that the U.S. Attorney had vital information in *Newman,* the same conclusion must apply herein, inasmuch as we are reviewing the same precise statement.

Thus, this Court is bound by precedent to find that the mere refusal to compel testimony by the U.S. Attorney did not constitute error.

2. *"Testimony" by the prosecutor*

A statement made by the Assistant U.S. Attorney in his closing remarks, however, serves to distinguish this case from *Newman.* To support Nee's testi-

---

7. Thus, the government produced testimony to establish that:
   a) Gaca suggested to Nee that they form a wiretapping business (Tr. 89) ;
   b) Gaca accompanied Nee when the latter purchased the wiretapping equipment (Tr. 92–93) ; and
   c) Gaca paid for at least half of the equipment purchased. (Tr. 94).

mony that he had served as a witness without "threats or promises or inducements", the prosecutor stated to the jury:

> "Our office has nothing to do with that. *We could not and would not deal with Mr. Nee.* He plead guilty." (Tr. 563–564) (emphasis added)

The government concedes that the above represents "testimony", but argues that its effect was not prejudicial because 1) the jury knew[8] that sentencing was within the Judge's prerogative and 2) cautionary instructions[9] were given to the jury.

■ The government's arguments are not persuasive. Had the Assistant U.S. Attorney believed that the jury actually understood the sentencing process, he would not have made the statement in the first place. It is more likely that the Assistant U.S. Attorney offered the comment in order to support the damaged credibility of the government's prime witness, Thomas Nee. A juror listening to Nee may well have discredited his testimony on the assumption that Nee had received a deal in return for a guilty plea and service as a witness. The "testimony" by the prosecutor undermined this assumption, and thereby prejudiced the defendant. When a prosecutor misstates facts in his closing remarks or states facts outside of the record in such a way as to prejudice a defendant, a new trial is required. *See* United States v. Tucker, 267 F.2d 212 (3d Cir. 1959). Where the prejudice is substantial, cautionary instructions will not preclude reversal. *See, e. g.,* Dunn v. United States, 307 F.2d 883, 886 (5th Cir. 1962); United States v. Bugros, 304 F.2d 177 (2d Cir. 1962); *cf.* Government of the Virgin Islands v. Turner, 409 F.2d 102, 103–104 (3d Cir. 1969). If the cautionary instruction is not clear and direct enough to neutralize the prejudice to the defendant, a reversal is mandated. *Cf.* United States v. Leftwich, 461 F.2d 586, 590 (3d Cir. 1972).

■ Given the vast investigative resources of the United States Attorney's office, there is a significant element of unfairness in permitting the government to introduce facts in closing argument. We have emphasized that:

> A United States Attorney in a criminal case has an even greater responsibility than counsel for an individual client. For the purpose of the individual case he represents the great authority of the United States and he must exercise that responsibility with the circumspection and dignity the occasion calls for.

United States v. LeFevre, 483 F.2d 477, 478 (3d Cir. 1973); United States v. Kravitz, 281 F.2d 581, 587 (3d Cir. 1960), cert. denied 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961). As discussed above, the trial court refused defense counsel's request to compel testimony on the issue of leniency. This refusal precluded Gaca from testing the truth of Nee's statement regarding the lack of bargains. Rather than submit its assertions on the issue of leniency to adversarial challenge, the government then insulated its factual assertions within its closing remarks, thereby prejudicing Gaca. We doubt that the general cautionary instruction to disregard "evidentiary" statements by counsel was sufficient to neutralize the prejudice evoked by the Assistant U.S. Attorney's statement.

### IV.

■ We find each of the errors listed above to be significant. However, this Court need not and does not reach the issue of whether any one of the errors, in and of itself, would be sufficient to require a new trial. We are satisfied that under the totality of the circumstances, 'Gaca has not been afforded a fundamentally fair trial. United States

---

8. The government admits that the most likely way that the jury could have obtained this knowledge was by listening to colloquy between counsel and the court.

9. As part of his charge, the trial judge explained that statements by the attorneys do not constitute evidence (Tr. 856).

v. Evans, 398 F.2d 159, 166 (3d Cir. 1968). The judgment of conviction will therefore be reversed and the case remanded to the district court for a new trial.[10]

## APPENDIX

With regard to the element of wilfulness, the district judge charged as follows:

. . . Now, let us get to the elements of the offense. Under the Federal system, nothing is a crime unless Congress has declared it to be a crime and so I will now read to you the Act enacted by the Congress of the United States with violating which this defendant has here been charged. Perhaps I ought also to state before going into that that mere knowledge that someone else has committed a crime would not be a ground for finding the defendant guilty. Mere part ownership of property which has been used by someone else in committing a crime would not be a ground upon which you could find the defendant guilty. For example, if someone owned an automobile and another person drove it out to a still in Fayette County and loaded it up with moonshine and brought it in and sold it here in Pittsburgh, that would not implicate the owner of the car. However, if you find that the defendant himself participated in any criminal offense, that would be different from mere knowledge of an offense committed by someone else or mere ownership of the instrumentalities by which the crime was committed so I direct your careful attention to the distinction between these and emphasize that in order to find the defendant guilty of the charge with which he is here on trial, you must be satisfied beyond a reasonable doubt that he himself did participate in the offense.

Now, as I say, I shall read to you the statute here involved which is 18 United States Code 2511(1)(a) which reads as follows:

'Except as otherwise specifically provided in this chapter, any person who willfully intercepts, endeavors to intercept or procures any other person to intercept or endeavors to intercept any wire or oral communication is guilty of the offense . . .'

which has been charged against this defendant and for which he is now on trial. In other words, the Government must satisfy you beyond a reasonable doubt that this defendant here on trial did 'willfully intercept, endeavor to intercept or procure another person to intercept or endeavor to intercept a wire or oral communication.'

 *　　 *　　 *　　 *　　 *　　 *

Now, I point out that one element of the offense is willfulness. That means that it was done intentionally, voluntarily, knowingly and with an evil purpose. This is what is called in the law a specific intent. There is a rule in criminal cases that any crime consists of a physical action or as Justice Holmes sometimes said 'voluntary muscular contraction by somebody together with an intent.' Well, in ordinary offenses, this does not cause much difficulty because there is also a rule that a person is presumed to have intended the natural consequences of his acts. In other words, if I put a gun at your heart and fire and you die, I cannot be heard to say that: 'Well, I didn't really mean to hurt the person.' When you aim a gun and fire at the vital portion of somebody's body, you are taken as intending the normal, natural consequences of the act so that is ordinary intent, but then there are some crimes which require a specific intent, for example, burglary which consists of breaking and entering into a dwelling house at night with the intent to commit a felony therein and a felony would be either to kill somebody, commit murder, or to steal something in the house, but the intent to murder or to steal would have to be specifically proved. That is what we call a specific intent as part of a crime as distin-

---

10. Since a new trial must be afforded Gaca, we do not reach and need not consider other asserted errors raised by Gaca on this appeal.

guished from the general intent which is an ingredient of all criminal offenses. So willfulness is in this wiretapping statute a part of and ingredient in the offense so that, for example, if a person were working as a telephone employee and tried to connect up a certain line in order to test, as part of legitimate business, whether it was working properly and happened to get the wrong connection or something and happened to hear somebody else's conversation, that would negate the element of willfulness. To be willful, it has to be voluntary and intentional and intentionally done, and when I read here 'except as otherwise specifically provided,' that refers to the fact that provisions were made by Congress in this statute passed in 1968 to permit wiretapping by law enforcement officials under certain specific procedures and safeguards which we are not concerned with here, but in general, it requires an order by Court after request presented by the Department of Justice, and I understand there is some question now being litigated in some cases as to whether the Attorney General in person must initial the request or whether somebody else can be designated to make that request to the Court, but those are matters that are not involved in this case, and I mention it merely as a matter of interest which has nothing to do with the case here because there is no question here of any authorized legitimate wiretapping by a law enforcement authority so except as otherwise specifically provided in these law enforcement provisions that are of no concern in the case, any person who willfully intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept any wire or oral communication.

\* \* \* \* \* \*

. . . [T]he real question in this case and the thing that you will particularly wish to consider with care is what, if any, was the participation of this defendant Frank Gaca in whatever interception was made? If you find that the witness Nee did intercept the O'Neil telephone, that in itself would not connect up with this defendant Frank Gaca or establish his guilt of any crime because Nee could have been acting entirely on his own. For example, he might have just himself concluded without any communication with anyone else that it would advance his standing or favor with Mr. Newman who was a public official, a councilman, said to be a rising star in the political firmament of McKeesport at that time. Perhaps Mr. Nee himself purely acting on his own did whatever he did without any assistance or help or participation on the part of the defendant Frank Gaca and if that were so, then Mr. Gaca should be acquitted or if the thing were done simply as a result of a discussion and an agreement between Councilman Newman and the witness Nee for the purpose of finding out what Mr. O'Neil had about free work, if that were the case and Gaca had nothing whatever to do with it, then, of course, you could not convict Gaca so that you must be convinced beyond a reasonable doubt not only that Nee or Nee in conjunction with discussions with someone else committed an offense, but you must be convinced beyond a reasonable doubt that this defendant participated in the offense.

Now, in that connection, your attention is drawn to the provisions of Title 18, Section 2 which is an old Act of Congress passed in 1948 reading as follows:

'(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

'(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.'

\* \* \* \* \* \*

. . . [U]nder (b), if you are satisfied beyond a reasonable doubt that the defendant Gaca did willfully cause an act to be done which if he had performed it directly himself or if it had been performed directly by another would have been an offense against the United States, he is punishable as a

principal. Similarly, under Subsection (a), if you find that the defendant Frank Gaca aided, abetted, counseled, commanded or procured the commission of an offense against the United States, he would also be punishable as a principal even though he didn't do it himself. He would be responsible if he aided, abetted, counseled, commanded, induced or procured its commission.

\*      \*      \*      \*      \*      \*

Of course, as has been said, there would be nothing in itself unlawful in taking down equipment, but the question which you have to decide, assuming that you accept as accurate the testimony which is in the case with respect to this defendant's participation, would be whether he aided and abetted the commission of the offense. In other words, did he give help or assistance to the commission of the offense by someone else as distinguished from mere knowledge of what the other person was doing, and as I say, to convict this defendant, you must find that he himself did to some extent participate in the offense by aiding or abetting or helping in its commission.

Tr. 576–587.