UNITED STATES of America,
Plaintiff-Appellee,

v.

Orlander Raymond BROWN,
Defendant-Appellant.

No. 75–2810.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1977.

Perry Hubbard, Tuscaloosa, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., James C. Thomason, III, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

Orlander Raymond Brown was convicted of making and causing to be made false entries in certain books, records, and statements of the First National Bank of Tuskaloosa, 18 U.S.C. Section 1005.[1] He was sentenced to a term of five years, six months to be served and the remainder on probation. Before Brown went to trial, his accomplice in the activity, Phillip A. Hargle, entered his plea of guilty and was the star witness for the prosecution. For reasons enunciated by the District Court, imposition of sentence was suspended as to Hargle and he was placed on probation for five years.

After hearing testimony which filled 779 pages of typewritten transcript, the jury deliberated 54 minutes before returning a guilty verdict.

The trial was not free of error, but finding those errors to have been harmless beyond a reasonable doubt, we affirm the Judgment of the District Court.

For the period charged in the indictment, May, 1973–August 2, 1974, Hargle was assistant cashier and head teller of the bank. Under the scheme for which appellant was convicted, Brown would "cash" checks at Hargle's window, who would then hold the checks out of the normal bank channels until the defendant told him to go ahead and process them. In various ways, he had made numerous false entries to cover his tracks. In exchange for this, defendant gave Hargle "meats and vegetables, a new Buick, and $500–$600." However, there came a time when there were 41 Brown "checks", totaling $275,000, which Brown could not cover. Hargle confessed to bank officials. This prosecution ensued.

Appellant depends for reversal on two arguments: (1) The trial court erroneously and prejudicially restricted cross examination of Hargle concerning his motivation for appearing as a government witness; (2) The government was permitted in its clos-

1. § 1005. *Bank entries, reports and transactions*

Whoever, being a officer, director, agent or employee of any Federal Reserve Bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

\*    \*    \*    \*    \*    \*

ing argument to obliquely comment on the failure of the defendant to take the witness stand in his own behalf.

### Point Number 1

This issue is sharpened by the fact that without Hargle's testimony the government could not have made out its case.

The transcript reveals that this is what happened:

Q. [By defense counsel] Mr. Hargle, Mr. Batchler [the assistant U. S. Attorney] asked you whether or not you entered a plea of guilty in this case and I believe you have indicated you have?

A. Yes, sir.

Q. And when was that plea of guilty entered?

A. I don't remember the date. It was in Judge McFadden's court in Birmingham.

Q. Approximately how long ago?

A. A month and a half or two months ago.

Q. And were you sentenced at that time?

A. No, sir.

Q. Are you now awaiting sentence?

A. Yes, sir.

Q. Have you been advised by your attorney as to what sentence, if any, you may expect?

A. Yes, sir.

Q. All right. Were you advised by your attorney of the recommendations of the probation officer, Mr. Perry Mathis?

MR. BATCHLER: Don't answer that, we object to that, if Your Honor please, whether he was advised by any probation officer or anything else.

THE COURT: Sustain.

MR. HUBBARD: We except. If I may I would like to make an offer to show and I can do it at the bench.

THE COURT: All right, I will give you the opportunity to do it.

(Following proceedings were had outside the hearing of the jury.)

MR. HUBBARD: I offer to show the recommendations of the probation officer was that he be placed on probation and be so advised.

MR. BATCHLER: This is not a matter for the jury and it goes to matters covered by the court.

THE COURT: I think the report made to me was that you agreed upon a recommendation between the prosecutor and the defense counsel that upon a plea of guilty they would recommend to the court a specific sentence. I don't have a specific recollection of the report. I do remember taking the man's plea but the record will show I am sure I inquired about that but the probation office report or the pre-sentence report made to the court is not made available to either the prosecutor or the defense counsel except such part the court might decide to be revealed to them and if the probation officer has made a recommendation the only way the lawyers would know about it is that the court revealed that in a conference. My recollection is not clear as to whether I did that or didn't. My recollection is that I didn't.

MR. HUBBARD: Let me state this: When this matter came up at the pre-trial before the Magistrate both counsel represented at that time and it is my recollection that Mr. Thomason stated at that time that the probation officer had recommended probation for this defendant. I stand to be corrected but this is my recollection.

MR. BATCHLER: Judge, we want to state that during the course of the trial whether that occurred or didn't occur is not part and parcel of any—

THE COURT: I assume what he is trying to do is to show that this man has agreed to plead guilty in return for the recommended sentence of an unknown quantity and that now he is testifying on behalf of the Government.

I will sustain as far as any recommendation of the probation officer. The recommendation of the probation officer in the final analysis is not any part of the plea bargaining.

\* \* \* \* \* \*

THE COURT: Well, as far as the recommendation of the probation officer as such I will adhere to the original ruling and sustain the objection.

MR. BATCHLER: Will you grant my request that the question should no way be considered? It is very prejudicial for him to ask about the presentence report and to mention the probation part.

THE COURT: I will give them instructions.

(The following proceedings were held within the presence and hearing of the jury.)

THE COURT: Ladies and Gentlemen, you will recall I am sure an instruction I gave you at the commencement of the trial that in the event the Court sustains an objection you are not to speculate on what the answer would have been had the Court permitted the question to be answered. It is the Court's judgment that whether or not any recommendation made by the probation officer, what that recommendation was is totally irrelevant to the issues we will ultimately be called upon to decide.

Either side wish an exception to that instruction?

MR. THOMASON: No, sir.

MR. HUBBARD: No exception to the instruction but I do except to the Court's ruling.

### Our Appraisal

Viewed from the appellate perch it would appear that in the heat of the fray all the actors lost sight of the mark. For example, when Hargle told defense counsel that he had been advised as to what sentence to expect, he was not asked to state the expectation. Instead, he was asked if he had been advised of the recommendations of the probation officer, which might, or might not, have had any relevancy to an expectation of leniency. Indeed, Hargle might have denied that knowledge.

In the total context of this trial it would not take on the proportions of a major point. Yet, the prosecution rushed in as if it were a highly significant matter and prevailed on the trial judge not only to sustain the objection but to accentuate the matter by instructing the jury that any recommendation by the probation officer was totally irrelevant. This would have been faultlessly correct only if Hargle was ignorant of the recommendation or if there had been no recommendation of leniency.

### Right to Confrontation of Witness

█ Manifestly, the right of an accused to cross examine the witnesses against him is embodied in the confrontation clause of the Sixth Amendment, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Indeed, "cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," *Ibid.*, 415 U.S. at 316, 94 S.Ct. at 1110.

█ Although the scope and extent of cross-examination is generally declared to be within the sound discretion of the trial court and not to be interfered with by an appellate court absent an abuse of discretion, *Grant v. United States*, 5 Cir. 1966, 368 F.2d 658, 661, that discretion must be exercised with due regard for the defendant's constitutional rights. Specifically, it is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on a "subject matter relevant to the witness's credibility", such as the witness's possible motive for testifying falsely. *Davis v. Alaska, supra*, 415 U.S. at 318, 94 S.Ct. 1105.

█ An accused is entitled to show by cross-examination that the testimony of a witness may be affected by fear or favor growing out of the disposition of pending criminal matters. *Alford v. United States*,

282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). As the *Alford* Court stated:

> Prejudice ensues from a denial of the opportunity to . . . put the weight of [a witness's] testimony and his credibility to a test, without which the jury cannot fairly appraise them. [cases omitted.] To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial (cases omitted).

282 U.S. at 692, 51 S.Ct. at 219.

■ When the witness being subjected to cross-examination is the "star witness", or was an accomplice or participant in the crime for which the defendant is being prosecuted, the importance of cross-examination is necessarily magnified. *Beaudine v. United States*, 5 Cir. 1966, 368 F.2d 417, 424. In *Grant v. United States*, 5 Cir. 1966, 368 F.2d 658, the Court was presented with a case in which defense counsel attempted to question one Holtzclaw, concerning his entering a guilty plea. The trial court sustained an objection to it. In reversing this ruling, the Fifth Circuit stated:

> The substance of the question went directly to Holtzclaw's credibility. It was an inquiry into motive and possible bias. It was a search for a promise or a reward on the part of the government in return for help in the prosecution of appellant. Holtzclaw and Smallwood were named as aiders and abettors in the indictment against appellant. They were involved in the very transactions in issue. The answer to the inquiry may have availed appellant nothing but it was addressed to a relevant area of inquiry and the witness was on cross-examination.

*Grant v. United States, supra,* 368 F.2d at 661.

Further, when the witness is an accomplice, wide latitude in cross-examination is generally allowed in order to give opposing counsel the maximum opportunity to test the witness's credibility by exploring his moti-vation for testifying. *Gordon v. United States*, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953).

In the instant case, Hargle was undoubtedly the government's indispensable witness. He had participated in the scheme, was indicted for it, and plead guilty. A reading of the trial transcript reveals that Hargle was virtually the sole witness concretely connecting the defendant to the operation of the scheme. The testimony of the other witnesses pertained to such matters as: the manner in which the defendant operated another banking account (R. Vol. II, pp. 23–30); that Hargle handled nearly all of defendant's banking transactions (R. Vol. II, pp. 469–483, 510–516); that another teller's cash slip was altered by Hargle (R. Vol. II, pp. 414–422); that the defendant came to the bank and had a meeting with bank officials in which he admitted to there "being a little trouble", that he was about $40,000 short, and that he would pay the monies due to the bank (R. Vol. II, pp. 425–430); that the defendant purchased a new car for Hargle (R. Vol. II, pp. 497–504); that defendant had forged his wife's name to certain checks (R. Vol. II, p. 563); and that the teller's cash book was short $275,-000, the vault was short $275,000, and the defendant's checks totalled that amount (R. Vol. II, pp. 308–332).

As was brought out on "cross" of several witnesses, however, Hargle could have carried out the scheme without the presence of defendant's checks. Hargle's testimony was the connecting link between the defendant and the testimony of the other witnesses.

The specific information sought to be elicited from Hargle on cross-examination was whether he had been advised by his attorney of the recommendation of the probation officer. The Court denied this inquiry stating: "The recommendation of the probation officer in the final analysis is not any part of the plea bargaining."

■ In determining whether this inquiry should have been permitted, it should be noted that "the jury must be apprised of any promise which induces a key govern-

ment witness to testify on the government's behalf." *United States v. Cawley*, 5 Cir. 1973, 481 F.2d 702, 707. Typically of course, such questions arise in connection with promises by one who can affect the decision to prosecute.

In *Gordon v. United States*, 344 U.S. 414, 422, 73 S.Ct. 369, 97 L.Ed. 447 (1952), the defense lawyer attempted to impeach a key government witness by offering parts of a transcript dealing with his guilty plea and subsequent probation. The Supreme Court observed:

> The transcript would have shown the jury that a federal judge, who still retained power to fix his sentence, in discussing Marshall's expectation of a "recommendation for a lenient sentence or for probation" had urged him to tell all he knew, "even though it might involve others." Involvement of others, whom Marshall had not theretofore mentioned, soon followed. We think the jury should have heard this warning of the judge, which was an addition to the matter brought out on cross-examination. The question for them is not what the judge intended by the admonition, nor how we, or even they, construe its meaning. We imply no criticism of it, and he expressly stated that he was holding out no promise. But the question for the jury is what effect they think these words had on the mind and conduct of a prisoner whose plea of guilty put him in large measure in the hands of the speaker. They might have regarded it as an incentive to involve others, and to supply a motive for Marshall's testimony other than a duty to recount the facts as best he could remember them. Reluctant as we are to differ with an experienced trial judge on the scope of cross-examination, the importance of this witness constrains us to hold that the transcript was erroneously excluded.

*Gordon v. United States, supra*, 344 U.S. at 422, 73 S.Ct. at 374.

In *Davis v. Alaska, supra*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 the district court had entered a protective order prohibiting questioning of a key prosecution witness, concerning his probationary status. In reversing this ruling, the Court stated:

> A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony". 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

> \*       \*       \*       \*       \*       \*

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided "a crucial link in the proof . . . of petitioner's act." *Douglas v. Alabama*, 380 U.S. 415, at 419, 85 S.Ct. [1074] at 1077, 13 L.Ed.2d 934. The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer.

*Davis v. Alaska, supra*, 415 U.S. at 316–318, 94 S.Ct. at 1110–1111.

Obviously, there are distinctions in *Gordon*, and *Davis*, and in the present case. In *Gordon*, the Court specifically observed that the comments concerning recommendations for parole were made by "a federal judge,

who still retained power to fix his sentence". In *Davis*, the witness was already on parole and had been questioned as to his possible involvement in the crime.

In the instant case, the answer sought on cross-examination concerned comments by the probation officer. Such an officer does not personally affix the sentence to be imposed. To deny, however, a probation officer's likely influence on the sentencing process would seem to ignore the obvious. For instance, under Rule 32 of the Federal Rules of Criminal Procedure, it is set forth that:

(1) The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence . . . . .

(2) *Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.

In the words of *Gordon, supra,* even though the probation officer's comments may have carried little weight, "the question for the jury is what effect they think these words had on the mind and conduct of a" witness. *Gordon v. United States, supra,* 344 U.S. at 422, 73 S.Ct. at 374.

One fact which must be brought out in support of the government's position in this case is that it appears from the record that this was no general denial of the right of cross-examination.

In *United States v. Harris,* 9 Cir. 1974, 501 F.2d 1, the Ninth Circuit condemned the proceeding at the trial below in which the trial judge had absolutely refused to allow any questions as to possible favors expected by the witness for testifying, deeming it an undue restriction on defense counsel's attempt to expose possible bias or prejudice on the part of the witness. There is, however, no indication that such transpired here. A review of the transcript reveals that other than the questions concerning Hargle's plea and whether he knew what to expect in the way of a sentence this was the only instance in which the defense attempted to inquire into Hargle's motives for testifying for the prosecution.

■ We think it was error to sustain the objection to this particular question and that the error was magnified by instructing the jury that the point was "totally irrelevant".

Nevertheless, within the four corners of this case, carefully weighing the record as a whole, we think the error was harmless beyond a reasonable doubt.

In his argument to the jury, defense counsel stated:

Let's go to Phillip Hargle. The threshold question is this. A month and a half or two months ago, Phillip Hargle stood in a court of law, the United States District Court for the Northern District of Alabama and said, I am guilty, I did it, I made false entries in the books of my employer and I am guilty. And yet he stood in this courtroom today unfettered. He has not yet been sentenced he testified and I ask you why has he not been sentenced? Why does he walk around a free man? Is there an interest that he may have in the conviction of O. R. Brown? Is this a fact which might raise some doubt in your mind if you were to rely upon his word in a matter affecting the most important issues of your life? If you were to have to rely on his word from the stand given under these circumstances when he has not been sentenced, would you think about that? Is that a reason or a doubt that arises from the evidence in this case? I think it is.

As Mr. Thomason pointed out, you are the judges of the credibility of the evidence, of the witnesses. I want you to judge Mr. Hargle's credibility. Let's look at what Mr. Hargle has said and Mr. Hargle, according to his own testimony, is a convicted felon. Those are ugly words but they are true words. He has stood before this court and said, I committed a

felony and he has gotten on that stand and said, I have given the funds of my employer, who trusts me, who nurtured me for 10 years, to a man I hardly know. I have given him $275,000 and in return for that what have I received? He said to you and under oath, five or six hundred dollars. Five or six hundred dollars for giving away $275,000 of my employer's funds.

It simply appears to us that there is no reasonable basis for suspecting that the jury was not keenly aware of Hargle's status—that he did have his hand in the lion's mouth, up to his shoulder, that in his own interest he had every reason on earth to cooperate with the prosecution, and that in weighing his credibility the jury could have been under no misapprehension about his motives, especially since highly able defense counsel subjected him to a withering, microscopic cross examination (50 pages of the transcript).

Moreover, the Court instructed the jury that a witness might be impeached or discredited by being convicted of a felony, that his motives should be considered, and that the testimony of an accomplice "is always to be received with caution and weighed with great care".

### Point Number 2

Orlander Raymond Brown exercised his right not to take the witness stand in his own behalf.

In the closing argument the Assistant United States Attorney saw fit to initiate the following episode:

"He [defense counsel] said Hargle is not credible. Well, ladies and gentlemen, he is just as credible as the defendant. He is just as credible as a person who signs 41 checks on the back, O. R. Brown and signs, Zemular Brown and also works a floating scheme and also has a net loss in 1973 of $43,000—I beg your pardon, a net worth loss of $43,000 and a net loss of $9,384 and for tax purposes he don't owe anything.

"THE COURT: Come up here, Mr. Batcheler.

(Consultation between Court and counsel outside the hearing of the jury as follows:)

"THE COURT: All right, Mr. Hubbard.

"MR. HUBBARD: I object to the argument of defendant's credibility on the ground it is an oblique effort on the part of the prosecution to comment on the failure of the defendant to take the stand.

"THE COURT: I will overrule. He is answering your closing argument the defendant was credible and you went on to say clearly from your argument you were talking about his actions as indicated by the evidence. This is the same inference I draw from the argument he is making and I overrule."

Why counsel thought his case necessitated this venture on thin ice is hard to imagine, but he ventured and was sustained by the Bench. Should it reverse the conviction? Without approving these zealous sallies into the fringes of dangerous territory, we respond in the negative.

This Court has made it very clear that "oblique comments on a defendant's failure to testify, if sufficiently suggestive, *are as unlawful as direct comments* (emphasis added)", *United States v. Driscoll*, 5 Cir. 1972, 454 F.2d 792, 800. Prosecutors ought to take notice and govern themselves accordingly.

We have also held that such arguments transgress permissibility when they are manifestly intended or are of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *United States v. Wilson*, 5 Cir. 1974, 500 F.2d 715, 721, *cert. den.*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658; *United States v. White*, 5 Cir. 1971, 444 F.2d 1274, *cert. den.*, 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266. We find it difficult to see how the "credibility" of a defendant is a relevant issue when he fails to take the stand.

Of course, these questionable comments may be harmless error and, in certain instances, they may be cured by appropriate

instructions. *United States v. Bursten, 5 Cir. 1971, 453 F.2d 605, 611, cert. den., 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83.* Cases have consistently held that the impropriety of the comment may be rendered harmless by a curative instruction to the jury. *See e. g., United States v. White, supra; United States v. Toler, 5 Cir. 1971, 440 F.2d 1242; United States v. Cerullo, 5 Cir. 1970, 435 F.2d 142.*

The Court below instructed the jury that the statements or arguments of counsel were not evidence, that the law does not compel a defendant to take the witness stand and testify, that no presumption of guilt may be raised and no inference of any kind drawn from the failure of a defendant to testify (R. Vol. II, pp. 786–790).

In a similar case in which the Fifth Circuit was asked to determine whether prosecutorial statements in closing argument warranted reversal, the Court observed:

> The district judge permitted the challenged argument as a fair response to defense arguments, but his instructions, both before argument and before the jury retired for its deliberations, stressed that the closing arguments were not evidence and that the jury should base its verdict solely on legally competent evidence. We have no indication that the jury failed to follow that instruction. We hold that, in light of the context of these arguments and of the district court's instructions, the comments did not constitute prejudicial error and are harmless beyond a reasonable doubt.
>
> *United States v. Bursten, supra,* 453 F.2d at 611.

On these principles, we should not allow this comment to overturn the conviction.

The Judgment of the District Court is AFFIRMED.

1. As he announced his ruling on the prosecution's objection to this line of questioning, the trial judge stated:

   THE COURT: I assume what he is trying to do is to show that this man has agreed to plead guilty in return for the recommended sentence of an unknown quantity and that now he is testifying on behalf of the Government.

JAMES C. HILL, Circuit Judge, specially concurring:

The majority has concluded that the trial court erred by restricting cross-examination of the Government's key witness, Hargle, concerning his motivation for appearing as a government witness. Hargle was an accomplice to Brown's crime who, prior to Brown's trial, had entered a plea of guilty, but had not been sentenced. Counsel for the defense asked Hargle on cross-examination whether he had been advised of the recommendations contained in the presentence report prepared by his probation officer, leaving the impression that Hargle had agreed to plead guilty and testify for the government in exchange for a favorable sentencing recommendation.[1]

When the prosecutor objected to defense counsel's question, the trial court sustained the objection, *insofar as the question pertained to the recommendation of the probation officer.* The Court stated that such a recommendation "is not any part of the plea bargaining," and instructed the jury not to speculate as to what was actually recommended since the recommendation would be irrelevant to the issues to be decided in the case. Although cross-examination was restricted with respect to the presentence report, the court did not otherwise restrict defense counsel's ability to inquire whether Hargle had been promised leniency in exchange for his testimony. For example, the Court's ruling did not preclude defense counsel from inquiring whether the *prosecutor,* as opposed to the probation officer, had ever suggested such an arrangement.

In view of this minimal restriction on defense counsel's ability to show Hargle's motivation for testifying, the question is whether the trial court should have allowed

> I will sustain as far as any recommendation of the probation officer. The recommendation of the probation officer in the final analysis is not any part of the plea bargaining.

defense counsel to cross-examine Hargle concerning the probation officer's recommendations. The affirmative answer of the majority is based on the Sixth Amendment right of an accused to cross-examine witnesses against him. While finding error in the ruling of the trial judge, however, the majority concludes that the error is harmless and, consequently, affirms the defendant's conviction. Since I would affirm the decision of the district court, including the ruling as to Hargle's testimony, I concur in the result reached by the majority, but I am constrained to disagree as to the admissibility of testimony revealing a probation officer's recommendations.

The Sixth Amendment guarantees a criminal defendant the right to determine on cross-examination whether any promise of leniency might have induced a key government witness to testify on the government's behalf. *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Grant v. United States,* 368 F.2d 658 (5th Cir. 1966). The majority, however, would not restrict the area of inquiry to inducements which might have been made by the prosecutor or his representative. Rather, the majority's approach would also permit inquiry into recommendations contained in a presentence report prepared by one who is employed by the judiciary and is independent of the plea bargaining process, *i.e.,* a probation officer. I believe that the majority disregards the fundamental role of the probation officer and the presentence report in the sentencing process.

Rule 32(c), F.R.Crim.P., governs the preparation and use of presentence reports:

(c) *Presentence Investigation.*

(1) *When Made.* The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.

The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time.

(2) *Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.

Significantly, the rule provides for preparation of presentence reports by probation officers, who are independent of the prosecutor's plea bargaining negotiations, to assist the court in the sentencing process. Contrary to the conclusion of the majority, it is clear that the recommendations contained in a presentence report are different from the sentencing recommendations of a prosecutor in several important respects. First, and most importantly, such reports are prepared *by an employee of the judiciary* to provide assistance requested by the court. In recognizing this distinction, I do not intend to minimize the importance of the prosecutor's role, as an officer of the court, in resolving cases through plea bargaining. I am mindful, however, that probation officers are accountable solely to the judiciary and, unlike prosecutors, they are not obligated to serve as advocates.

Second, a probation officer's recommendations are not properly used as inducements to obtain testimony or cooperation from government witnesses, whereas a prosecutor's recommendations are so used. Finally, a probation officer's recommendations must be based on an objective evaluation of the factors specified in Rule 32(c)(2), *supra.* A prosecutor's sentencing recom-

mendation, on the other hand, might well be influenced by the defendant's willingness to cooperate with the government.

A further distinction exists between the recommendations contained in a presentence report and the sentencing recommendations made by a prosecutor, which serves to illustrate my conclusions. Rule 32(c)(3)(A), F.R.Crim.P. specifically provides as follows:

(A) Before imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the report of the presentence investigation *exclusive of any recommendation as to sentence,* but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons .  .  .  .. (emphasis added).[2]

The Advisory Committee Note to Rule 32(c)(3)(A) explains why sentencing recommendations are excluded from the mandatory disclosure requirement of the rule:

Any recommendation as to sentence should not be disclosed as it may impair the effectiveness of the probation officer if the defendant is under supervision on probation or parole.

In subsection (c)(3)(D), Rule 32 provides further that

[a]ny copies of the presentence investigation report made available to the defendant or his counsel and the attorney for the government shall be returned to the probation officer immediately following the imposition of sentence or the granting of probation, unless the court, in its discretion otherwise directs.

\*    \*    \*    \*    \*    \*

The Committee Report indicates that this section is intended to insure that presentence reports do not become available to "unauthorized persons."

Thus, from the text of Rule 32 itself, two relevant considerations are readily apparent. First, a defendant is entitled to examine the contents of a presentence report, *exclusive of the sentencing recommendation, if any.* Second, unless the court, in its discretion, directs otherwise, any copies of the presentence report made available to the defendant or his counsel and the attorney for the government must be returned to the probation officer immediately following the imposition of sentence or the granting of probation. Ordinarily, presentence reports should not be made available to "unauthorized persons," *i.e.,* persons not entitled by Rule 32 to read the reports.

The totally different posture of the prosecutor, as an advocate, to that of the probation officer, as an advisor to the court, amply illustrates to me that a prosecutor's willingness to recommend leniency is material and must be disclosed, but a probation officer's sentencing recommendation is immaterial to any issue in the case. Although it is contended here that the confidentiality of the report had been breached and the recommendation had been disclosed before the trial, the fact is that the law contemplates these recommendations as confidential while demanding disclosure of any recommendation by the prosecutor. This illustrates the distinction that one recommendation can be an inducement and the other cannot.

In short, given the purpose of the presentence report—to provide adequate information for sentencing—as well as the role of the probation officer and the confidentiality generally associated with such reports, I believe the trial court properly restricted cross-examination of witness Hargle.

**2.** Thus, disclosure of the contents of the presentence report, exclusive of any sentencing recommendation, is mandatory unless the court is of the opinion disclosure would seriously interfere with rehabilitation, compromise confi-

dentiality or create risk of harm to the defendant or others. Prior to 1975, the rule provided that such disclosure was discretionary with the trial judge. *See Gregg v. United States,* 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969).